The Marine Trust Company of Buffalo, Executor of Estate of Julia T. Sherman, Deceased, Appellee, v. Frank G. Reynolds, Successor Trustee Under the Last Will and Testament of William D. Boyce, Deceased, et al. (Defendants).

Appeal of Frank G. Reynolds, Individually and as Successor Trustee Under the Last Will and Testament of William D. Boyce, Deceased, et al., Appellants.

Gen. No. 41,247.

Opinion filed February 26, 1941. Rehearing denied March 10, 1941.

WEST & ECKHART, of Chicago, and HAROLD L. RICHOLSON, of Ottawa, for appellants; ROY O. WEST and SAMUEL B. KRAUS, both of Chicago, of counsel.

Urion, Bishop & Sladkey, of Chicago, for appellee; Howard F. Bishop and Jerome J. Sladkey and Robert F. Dewey, of Chicago, of counsel.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

Julia T. Sherman, deceased, during her lifetime commenced an action at law in 1935 against her tenant for the breach of two covenants under a 99-year lease. One covenant was for the payment of specific rentals aggregating $8,250 when the suit was instituted, and the other was a covenant to pay taxes by way of additional rental, for the alleged breach of which $59,673.62 was claimed in the complaint. During the pendency of that suit, the plaintiff died and the executor of her estate, the Marine Trust Company of Buffalo, was substituted as plaintiff, and is the appellee in the proceeding before us for review.

Originally, the suit was against three individuals, Frank G. Reynolds, Mary J. Boyce, and Dickinson Bishop, described as successor trustees under the last will and testament of William D. Boyce, deceased. Three years after filing the suit, Foreman State Trust and Savings Bank, a corporation, and Charles H. Albers, receiver thereof, were made additional defendants, both individually and as trustees. At the same time, claim was made for additional specific rentals and additional taxes accruing after the institution of the suit, bringing the total claim up to $122,529.66. The form of action was also changed into one seeking equitable relief by way of a money judgment against all the defendants, which judgment it was asked be declared a lien upon the trust property and assets being administered by the trustees, and the new complaint also prayed that the lien be foreclosed and that a receiver be appointed to liquidate as much of said assets as should be necessary to discharge the said judgment. Some months later thirteen additional par-

ties were made defendants, embracing the twelve beneficiaries of the trust under the will of William D. Boyce, deceased, and the guardian of the estates of certain minor beneficiaries.

No point is raised on the pleadings.

The cause was tried by the court without a jury, and resulted in the entry of two judgments or decrees. The effect of the decrees entered by the court after the hearing, was:

(a)   To dismiss the defendants, Charles H. Albers, as receiver of Foreman State Trust & Savings Bank, and the said Foreman State Trust & Savings Bank, a corporation, out of and from the said suit;

(b)   To find that there is due from the defendants, Frank G. Reynolds, Mary J. Boyce, and Dickinson Bishop, individually, the sum of $28,875 and interest thereon, making a total liability of $33,042.70;

(c)   To find said Reynolds, Boyce, and Bishop as successor trustees under the will of William D. Boyce and the assets of the trust estate liable for $30,250 for rent, with interest amounting to $4,554.79, and liable for taxes for 1929 amounting to $4,788.90, with interest thereon amounting to $2,057.21, and for taxes for the year 1932 amounting to $4,275.97 with interest thereon amounting to $1,204.40, making such total liability of the successor trustees and the trust corpus $47,131.27;

(d)   There is then a judgment order against said Reynolds, Boyce, and Bishop for the aforesaid sum of $33,042.70 and costs and order that execution issue;

(e)   The later decree then appointed Ernest H. Lyons receiver to take possession of all of the assets of the trust under the will of William D. Boyce and to liquidate sufficient thereof to pay the aforesaid sum of $47,131.27.

The court further found by its decree that the attempted assignment to Garry L. Culver was ineffective to operate as an assignment and that it was not bona fide but was colorable, and that the former trustees and

the successor trustees continued to exercise domain and control over the premises thereafter.

In setting forth the theory of the defendants, appellants here, it will be noted that it consists of a partial statement of fact, partial argument and an analysis of the evidence. This is rather confusing, but we are setting it forth as it has been presented to us for consideration. It is substantially as follows:

"With respect to the specific rents payable under paragraph Third of the lease and the taxes payable under paragraph Fourth of the lease, which did not become due until after the assignment of the lessee's interest to Culver on February 28, 1934, the defendants contend:

"(a)   The predecessor trustee which made that assignment was bound only under privity of estate, which privity was terminated by the subsequent assignment to Culver, and that therefore the said Trustee, and any successor trustees were released from any subsequently accruing obligations of the lessee under the lease. The fact that this assignment may have been made for the sole purpose of terminating such future liability, and that the assignee was financially irresponsible, does not render the assignment ineffective nor prevent the foregoing legal consequences, *i.e.,* termination of future accruing liabilities.

"(b)   W. D. Boyce's gratuitous statement of February 27, 1925, that he would pay subsequent rentals and perform the covenants of the lease, contained in a notice of that date from W. D. Boyce Company to Julia T. Sherman, was without consideration and was ineffective to re-establish the privity of contract which had been terminated by the several previous assignments of the lessee's interest. Furthermore, even such privity of contract, if it had been recreated, was terminated upon the death of W. D. Boyce. Executors and trustees of deceased lessees stand in a relation of privity of estate only and not of privity of contract.

"(c)   Even though the Boyce Trustees' obligations at the time of the assignment arose by virtue of privity of contract, such obligations were terminated by the Culver assignment, under the express provisions of paragraph Tenth of the lease which provided that after such an assignment the lessee shall no longer remain personally liable, but only the property itself and the assignee shall be liable for the covenants of the lessee.   Upon this issue the defendants further contend that the notice of intention to assign was in strict conformity with the requirements of paragraph Tenth of the lease; that the assignee's address recited in that notice was his business address; and that the interest assigned was the lessee's entire interest in the Sherman lease, which was a lease or grant distinct from the Bentley lease, both of which leases or grants were incorporated in the single Indenture of Lease upon which the suit is based.

"(d)   With respect to the taxes and the one installment of specific rent which accrued before the appointment of the present successor trustee on June 11, 1934, the defendants contend that trustee's liabilities are personal only; that the successor trustees are not liable for breaches or defaults committed by predecessor trustees, and that the trust assets cannot be reached directly in this case because such relief in equity is available only where the defaulting trustee has become insolvent or is absent from the jurisdiction and would be entitled to indemnification out of corpus of the trust if he personally satisfied the obligations, and that in the present case Foreman-State Trust and Savings Bank, predecessor trustee, would have had no such right of indemnification out of trust assets.

"(e)   With respect to all and every part of the taxes claimed, the defendants contend that under paragraphs Twelfth and Thirteenth of the lease it has been expressly provided that such taxes shall become additional rent only if and when paid by the lessor, that

no action can lie to recover the same until they have so become additional rent, and that the present claim must fall because the lessor has not yet paid the said taxes or any part thereof. With respect to every part of such taxes the defendants contend further that there has not yet occurred any breach of the lessee's covenants under the lease because the only time provision, contained in paragraph Fourth of the lease, is to pay taxes 'in apt time to prevent a sale of any part of the said premises therefor,' and there is no evidence or claim that any part of the said premises has been sold or that there is any threat or imminence of a sale thereof for non-payment of taxes. The defendants further contend that, even if contrary to the express provision above recited, paragraph Fourth should be so construed as to require the lessee to pay taxes before *delinquency date,* such requirement was waived by plaintiff's testatrix, Julia T. Sherman, filing objections to the taxes for the years 1931 to 1934, inclusive, all of which objections are still pending.

"With respect to any taxes which upon any theory could have become due prior to the discharge of the executor of the W. D. Boyce estate on September 8, 1930, the defendants contend that the action is barred under Section 70 of the Administration Act because of failure to exhibit the claim to the Probate Court of LaSalle County within one year from the granting of Letters on July 24, 1929.

"(f) With respect to the rents which became due after the appointment of a Tax Receiver by the County Court on July 24, 1933, and the appointment of a Tax Receiver by the Circuit Court on August 8, 1934, defendants contend that the only proper party to sue for or to recover any such rents (from the tenant who is liable for them) is the County Collector as Receiver, and as to such rents the present plaintiff has no standing in court."

The theory of the plaintiff appellee is set out under the title, "Propositions to Meet Alleged Errors and to Sustain Decree," and is substantially as follows:

(1)   That the trial court's finding of fact that the assignment was not bona fide, that it was colorable, and that it was ineffective as an assignment, is amply supported by the evidence and should be sustained.

(2)   That the attempted assignment did not conform to requirements of the lease and did not purport to assign lessee's entire interest.

(3)   That the said lessee's interest was physically and legally incapable of division.

(4)   That the present trust estate is liable for the defaults of the predecessor trustee on account of the insolvency and dissolution of the predecessor and because of the wording of the will.

(5)   That the taxes are recoverable without a tax sale having been held and that they are recoverable without the lessor having paid the same.

(6)   That the appointment of a tax receiver under the Skarda Act does not in any manner deprive the plaintiff of its remedies under the lease.

The evidence in this case shows substantially the following:

That the building in question was located at 28-30 North Dearborn street and consisted of 12 stories; that the ground upon which the building was built was leased from two different parties and said building had approximately a 20 foot frontage for each part, but the building covered the entire frontage; that the assignment covered number 28 North Dearborn street; that the elevators in said building were located on one side thereof, and the boilers and other paraphernalia necessary for the maintenance of an office building was located on the other side of said building. The north half of the fee of this property was owned by Mary J. Boyce.

On the question of the assignment of the lease, the evidence shows that the alleged assignee Culver was a former employee of W. D. Boyce Co., but that at the time of the assignment he was out of employment and was looking for a position; that he was without financial responsibility and at the time of the assignment he still used the office of W. D. Boyce Co. for his personal use, the dictation of letters and for conferences regarding the termination liability had at different times; that Reynolds talked with Culver a few weeks or "it might have been a few months" before the assignment. Many of the facts were developed from either the defendant Reynolds or from Culver, who stated he desired to help the defendant and who admitted he was in Mr. Kraus's office prior to the trial and "threshed over" some of the points raised in the previous hearing. When the proposition of assignment was first broached to Culver, nothing was told him about the rental obligations, the condition of the taxes or the liabilities he would be assuming. He did not go through the premises at any time prior to the assignment and was not familiar with the nature or condition of the building. The lease was never delivered to him either before or after the assignment and he had never read it in detail. He knew there was no income from the premises and that he could not pay rent and he took no active interest in connection with the management or maintenance of the premises, either before or after the assignment, nor in connection with the taxes or rentals. Any inquiry which came to him, after the assignment, regarding a possible sale of the premises, was sent to Mr. Reynolds; that this was a letter which Culver received at Little Rock, Arkansas, and inclosed with a letter of his own to Mr. Reynolds. Reynolds suggested to him that he give Mr. Kraus, attorney for the trustee, a power of attorney, which power of attorney Mr. Reynolds sent to him to be executed at Little Rock. He executed the power of at-

torney and then sent it back to Reynolds. Apparently, no question was asked by Culver about the reasons for such power of attorney, but it was signed by Culver and returned to Reynolds. The purported assignment was concluded about 10:30 in the evening of February 28, 1934. Shortly after the supposed delivery of the assignment on February 28, 1934, Reynolds testified that late that same night he started thinking about the assignment and thought he had made a mistake and would be criticized. He called or saw Kraus the next morning and "thought we ought to try to hold on to it somehow" and thought he should be in a position to get the property back.

The evidence further shows that early the following morning Culver saw Reynolds, was directed to Kraus' office, and either before or after recording the assignment, executed an option back to the trustees, for which it was agreed that he, Culver, would be paid $500, $100 of which was then paid and $400 paid later by the present trustee. During the arrangements and execution of this option Mr. Culver, Mr. Kraus and Mr. Reynolds were present.

The evidence further shows that the purported assignment related to the trustee's interest in the south half only of the premises, the fee to which was owned by the plaintiff's testate, and did not assign or attempt to assign the north half, the fee to which was owned by Mary J. Boyce, defendant herein, although there was a single unit building covering the whole of said premises, neither half of which could be operated in any manner without the other half. The insurance policies or the sublease were not assigned to Culver. When there was an application for a lease for one or two floors of said premises after the supposed assignment, it was Mr. Reynolds who discussed this with Mr. Miner. The alleged assignment to Culver was delivered by Culver back to Mr. Reynolds some time after he received it, so he had neither the lease nor the

assignment and Culver did not recall having received any papers, documents, subleases, or policies of any kind in connection with the assignment. He paid no rent or any taxes nor made any repairs and had nothing to do in the way of management. He had no attorney in connection with the assignment, option or power of attorney. He testified, "Specifically what property was covered by the assignment I do not know." No notice of the supposed assignment was given to the tenants. After the execution of the so-called option to the Foreman State Trust & Savings Bank, as trustee, the balance of the $400 was paid by the latter for the option which was to run for 3 years.

Having considered the foregoing evidence, the trial court made a finding as follows:

" . . . fourth, that on February 28, 1934, Foreman-State Trust and Savings Bank, as Trustee of an estate under the Will of W. D. Boyce, deceased, attempted to make a written assignment of the unexpired portion of said lease as it appertained to the Sherman tract to one Garry L. Culver, and that said attempted assignment was ineffective and not bona fide but was colorable and that said Foreman-State Trust and Savings Bank, as Trustee, continued thereafter to exercise dominion and control over the said premises; . . .

We think this finding by the trial court was fully justified by the evidence.

At the time of the trial and also on appeal, plaintiff contends:

1. That said purported assignment was entirely colorable, not bona fide, and that the old successor trustees continued to control the property thereafter.

2. That the said attempted assignment was ineffective because it purported to assign only one half of the lease, and this could not be done because (a) the premises were physically incapable of such division; (b) the context of the lease indicates it was considered a unit and could not be assigned except in its entirety.

The contentions of appellees, we think, were amply proven and particularly in view of the fact that the sole purpose of the defendant in making the assignment was to avoid liability and that the lease was assigned to a wholly irresponsible assignee who did not take possession of the property. Defendants do not contend nor do they attempt to show that the trial court's finding in this regard was erroneous or as to whether or not the assignment was merely colorable and not bona fide or against the manifest weight of the evidence. There is a presumption on appeal in favor of the finding of fact made by a trial court. *Cohen v. Schimberg,* 165 Ill. App. 170. In the absence of a finding of fact by a jury, the court's finding of fact is equivalent thereto. *Fifth Ave. Library Society v. Cavanaugh,* 186 Ill. App. 123; *Sumner v. Elgin Condensed Milk Co.,* 87 Ill. App. 217. The findings of the court will be sustained unless they are wholly unsupported by the evidence. *Town of Bois D'Arc v. Convery,* 255 Ill. 511.

In the case of *Springer v. Chicago Real Estate L. & T. Co.,* 102 Ill. App. 294, the court in its opinion at page 300, said:

"In the present case it appears that notwithstanding the making and recording of an assignment of the lease by Springer, he has continued and still is in control of the premises. . . . Such continued control, collection and payment, as well as the absence of evidence showing that Harris has ever done anything more than to receive the assignment, give his note for $500 therefor and in a short time receive it back, tends to sustain the finding of the chancellor in this regard." In that case the assignor remained liable.

At the risk of prolixity, we shall again state the claims of the parties. As we view the contention of the parties here, in the last analysis, it is as follows: The defendants contend that having the right of assignment of said lease, they cannot be deprived of this

right by the fact that the assignee is of meager financial standing and that their motive in making the assignment is not a factor which may be considered. On the other hand, the plaintiff claims that in order that the assignment be binding on anyone, it must be a valid, bona fide transaction and not a colorable, deceptive transfer of mere form and having no substance. We do not believe the evidence before us shows a valid, subsisting assignment was in reality made, but, on the contrary, it was merely colorable as the trial court so found. Consequently, the defendants were not relieved of the obligations of the said lease and their actions did not release them from the obligations relative thereto and they must be held to be still liable under its terms, the same as though no transfer were attempted to be made.

Many other questions are raised, a discussion of which is unnecessary and would add to this already lengthy opinion. If the transfer of the lease was merely colorable and not bona fide, then there was no transfer. This appeal is from a court of equity, which court having found that the so-called assignment of the leases was not in legal contemplation really made but only in form to an irresponsible person for an ulterior purpose, namely, to escape liability, and that, therefore, said lease was a mere form and not of substance, there appears to be no way in which the contentions of appellant can now be sustained.

For the reasons herein given the decree of the superior court is affirmed.

*Decree affirmed.*

HEBEL, P. J., and BURKE, J., concur.