Vergil Reed, Plaintiff-Appellee, v. Washington National Insurance Company, Defendant-Appellant.

Gen. No. 9,996.

Third District.

May 16, 1955.

Released for publication June 1, 1955.

Henry I. Green, Darius E. Phebus, and Hurshal C. Tummelson, all of Urbana, for appellant; Oris Barth, of Urbana, of counsel.

Arthur L. Price, of Champaign, for appellee.

MR. PRESIDING JUSTICE CARROLL delivered the opinion of the court.

Plaintiff brought this action as beneficiary under an insurance policy issued by defendant upon the life of Juanita Reed, deceased. A jury trial resulted in a verdict for plaintiff in the amount of $1,058.33. Defendant's motion for a new trial or, in the alternative, for judgment notwithstanding the verdict was overruled. From a judgment on the verdict defendant brings this appeal.

Facts not in dispute disclosed by the record are that defendant issued the policy on May 5, 1952; that the same was permitted to lapse for nonpayment of premiums on August 30, 1952; and that the insured applied for reinstatement thereof on September 10, 1952. The application for such reinstatement was upon defendant's printed form which contained the following:

"Should this policy become void in consequence of nonpayment of premium, it may be revived if not more than the premiums for three years are due upon payment of all premiums in arrears and the presentation of evidence satisfactory to the company of the sound

health of the insured, provided the cash value hereunder has not been paid."

The policy contained the following provision with reference to reinstatement:

"I represent to the best of my knowledge and belief that all of the persons to be insured under the above policies are now alive and in sound health and understand that the insurance shall not become effective unless application is approved by the Company at its Executive Offices in Evanston, Illinois."

The policy was reinstated on September 22, 1952. At 8:00 o'clock on the morning of that date the insured was operated upon for removal of a tumor of her right lung, and died about 12:30 o'clock on the same day. Plaintiff executed proof of death of the insured on October 3, 1952. The defendant refused payment under the policy and tendered return of the premiums paid by insured upon reinstatement.

It is the defendant's theory that the issue in this case is whether the insured furnished honest evidence that she was in sound health at the time she applied for reinstatement of the policy. The defendant contends that upon this issue the plaintiff failed to make proof and therefore it's motion for judgment notwithstanding the verdict should have been sustained.

The plaintiff's theory is the jury properly found that the insured honestly represented she was in good health at the time she applied for reinstatement of the policy and that the verdict is sustained by the evidence.

From their briefs and arguments the parties appear to be in agreement on the proposition that the basic question presented for decision on this appeal must be resolved from a consideration of the evidence.

The right of the plaintiff to recover depends upon determination of the issue as to whether the decedent acted honestly and in good faith when she stated in her application for reinstatement on September 10, 1952,

51

that she was in sound health. This was an issue of fact to be decided by the jury.

Since the only seriously disputed fact question is whether the decedent knew, when she signed the reinstatement application, she was not in sound health, our review of the evidence will be limited to that bearing upon such question.

Plaintiff testified he knew nothing concerning the presence of a tumor when the application was signed by decedent; that he knew she went over to see Dr. Stilwell about some cold business; that she had a very bad cold; that her death was very much unexpected; and that she had been in perfect health.

Dr. Stilwell, witness for plaintiff, testified he talked with decedent during the first part of August 1952, following receipt of an X-ray taken on August 4, 1952; that he received a report in August 1952, from Dr. Cole of the Champaign T. B. Hospital of a chest X-ray of decedent; that such report found some density in the right apex; that a copy of the report goes to the patient; that he interviewed Mrs. Reed a couple of times during the month of August and recommended another chest X-ray be taken; that an X-ray was taken on September 5, 1952; that he didn't recall informing her that she had a tumor; that he might have mentioned the fact to her; that she was complaining of some abdominal pain which brought her to his office on that particular day—September 5, 1952; that he asked her to have an X-ray taken of her chest; that he advised her sometime between September 5 and September 17 that she had a definite mass in her right chest for which surgery was recommended or advised; and that surgery was based on the report on the X-ray taken September 5. On cross-examination this witness testified that he had no written report of telling decedent she had a tumor in her right chest prior to September 5; that in his discovery deposition he had stated he told decedent during the first week of September

and prior to September 5, 1952, that "she had a tumor in the right chest and probably would have to have surgical removal of the tumor"; and that the death of the decedent was brought about by the operation and removal of the tumor.

Plaintiff, upon being recalled as a witness, further testified that the decedent complained of nothing but colds prior to September 10, 1952; and that he suggested she have an X-ray taken.

Witness Evans, called by plaintiff, testified that he was employed by defendant at the time the application for reinstatement was made, and that decedent then told him she was in good health.

James F. Hatch, manager for defendant in the territory where decedent lived, testified he had no direct dealings with decedent. His testimony related only to the receipt of the reinstatement application by defendant and threw no light upon the condition of health of the decedent when she signed the application.

The foregoing constitutes substantially all of the evidence produced by plaintiff on the trial insofar as it bears upon the question whether decedent knew, on September 10, 1952, that her health was not sound.

██ Plaintiff alleged in his complaint, and it was incumbent upon him to prove, that the insured performed all of the conditions of the policy required of her thereby. The policy specifically provides that one of the conditions prerequisite to effecting revival thereof was the presentation by the insured to defendant of satisfactory evidence of her sound health. This provision is a part of the insurance contract, and like all other provisions thereof, was binding upon both parties thereto. The defendant was entitled to performance of such provision. Froehler v. North American Life Ins. Co., 374 Ill. 17.

Therefore, the question to be determined is whether the decedent was acting in good faith and honesty on

September 10, 1952, when she represented to the defendant that she was in sound health.

 The undisputed evidence is that the decedent was not in sound health at that time; that she then had a tumor in her right chest; and that she died 12 days thereafter from surgery for the removal of said tumor. This evidence, however, cannot be said to be conclusive on the issue as to the honesty and good faith of the decedent in representing her health to be sound. But, since the fact of the unsound condition of decedent's health when she signed the application is admitted, the plaintiff was required to prove that she then had no knowledge of such condition. Without such proof the plaintiff could not recover.

The testimony of Dr. Stilwell appears to be the only evidence offered by plaintiff upon this vital issue of the case. This witness testified he talked with decedent during the first part of August 1952, following an X-ray taken August 4 of that year; that she consulted him on September 5, 1952, after he received an X-ray report on her health from the Champaign T. B. Hospital; that he did not request the report; that he received it as decedent's doctor; that decedent simultaneously received a copy of said report; that the occasion for decedent being in the witness' office on September 5 was the same X-ray report; that he interviewed decedent a couple of times during the month of August; that the surgery finally performed was based on an X-ray taken September 5. There appears to be some question as to the exact date on which the doctor first discussed the presence of a tumor with decedent and when surgery was recommended. The witness did, however, testify that he advised her of the tumor sometime between September 5 and September 17.

We think any fair consideration of this evidence can lead only to the conclusion that decedent was a patient of Dr. Stilwell during the period from the first part of August 1952 until her death. What reason other than

to ascertain the condition of her health would occasion the visit of decedent to her doctor's office and the taking of an X-ray? The only reasonable inference which could arise from the testimony of Dr. Stilwell is that she sought the services of the doctor because she was not in sound health. His testimony clearly indicates he gave her no report upon which she could base a belief that she was then in sound health. This being true, his testimony tends to dispute rather than prove decedent's lack of knowledge of her unsound health when she applied for reinstatement of the policy.

Whether the decedent acted in good faith when she stated she was in sound health must be determined from the evidence as to her knowledge of her health condition at that time. There appears to be no evidence in the record supporting any reasonable conclusion that decedent did not know of her unsound health on September 10, 1952.

It would be most unreasonable to conclude that decedent would consult her doctor on numerous occasions and have two X-rays of her chest and then still honestly believe her health to be sound. Honesty and good faith required her to disclose the facts concerning her health when she signed the application for reinstatement of the policy. In the absence of any evidence of her doctor giving her assurance that the X-ray report revealed no evidence of ill health, we must hold that plaintiff failed to prove that decedent honestly and in good faith complied with the conditions required of her by the policy for its reinstatement.

The case of Froehler v. North American Life Ins. Co., supra, is apparently relied upon by both parties. The rules of law therein announced are applicable here. However, the facts in the two cases are clearly distinguishable. In the Froehler case the insured, in an application for reinstatement of his policy, made May 4, 1933, stated he was in good health and had not

55

consulted a physician within the last 5 years. The evidence disclosed that about a week or so after signing the application he consulted a doctor complaining of illness; that on May 17, 1933 he received a diagnosis of brain tumor, was operated on May 19 and died the same day. It was shown by medical evidence that the early symptoms of brain tumor are not alarming and give its victim no prior warning of its presence; and that the insured worked at his usual occupation until he went to the hospital on May 17, 1933.

One of the issues of fact in the Froehler case was whether the insured acted in good faith when he stated in his application for reinstatement that he was in good health. The jury found that the evidence of good health furnished to the insurer was honestly given and the court held the verdict to be sustained by the evidence.

The issue in the instant case is the same as that involved in the Froehler case. However, the latter is only authority for the proposition that where there is evidence fairly tending to show the honesty and good faith of the insured in making a statement as to his or her good health, the issue presented is one of fact for the jury. In McMahon v. Continental Assur. Co., 308 Ill. App. 27, wherein the opinion in the Froehler case was analyzed, the court had this to say:

"The issue therein was whether the insured acted in good faith when he stated in his application for reinstatement that he was in good health. No issue was involved in that case as to false representations in the application for reinstatement except the question as to whether the insured had in good faith answered the question with reference to the condition of his health at the time he signed the application. . . . The Froehler case does not hold that, if the insured was not in good health at the time he signed the application for reinstatement and knew that he was not in good

56

health and fraudulently stated in his application that he was in good health, nevertheless he would be entitled to recover."

The obvious factor distinguishing the record in the Froehler case from that before the court on the instant appeal is the lack in the latter of evidence tending to show the honesty and good faith of the decedent in stating in her application that she was, at that time, in sound health.

In the instant case we are of the opinion that there is no evidence in the record, taken in its aspect most favorable to the plaintiff, to sustain the cause of action. For this reason the judgment of the circuit court will be reversed.

Reversed.