Mary S. Broccolo, Plaintiff-Appellee, v. Horace Mann
Mutual Casualty Company, Defendant-Appellant.

Gen. No. 48,741.

First District, First Division.
October 22, 1962.
Rehearing denied November 15, 1962.

Halfpenny, Hahn and Ryan, of Chicago (James F. Flanagan and Mary M. Shaw, of counsel), for appellant.

Mark J. Satter, of Chicago (Paul Broccolo, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant appeals from a summary judgment of $878.16, entered in favor of plaintiff, for hospital and surgical benefits under a group insurance policy issued by defendant. The facts, including the nature of the operation and the expenses, are not in dispute. The judgment was entered on the pleadings and affidavits.

Prior to December 16, 1955, defendant issued a group policy to the Illinois Education Association to cover its members. Thereafter, plaintiff, a school teacher and an Association member, executed a "consent" statement and received a certificate of insurance for the "Insurance period 12–16–55 to 12–16–56." No medical examination was made or requested of plaintiff, nor was any questionnaire or statement required as to the previous physical or life history of plaintiff. Subsequently, from August 7, 1956, to August 28, 1956, plaintiff was hospitalized for a hysterectomy. The expenses then incurred for hospital, surgical, and nursing care are the basis of plaintiff's claim.

Defendant denies liability because a clause in the policy states:

"This policy does not cover any loss resulting from sickness contracted or commencing prior to the time a person is insured under this policy, except for such loss occurring two years after the effective date of the policy."

A counteraffidavit to the motion for summary judgment, filed on behalf of defendant, includes photostatic copies of documents delivered to defendant by plaintiff in support of her claim for policy benefits. Plaintiff does not dispute the existence or accuracy of the documents represented, which are her written claim, a statement by the attending physician, and a copy of her hospital record. Plaintiff contends that this counteraffidavit should be ignored, because it was not timely filed, and the trial court record fails to indicate an order granting leave to file it. However, as plaintiff states, "It is in the record, and the trial court gave defendant the benefit of the court's consideration of it, for whatever it was worth; and then entered judgment for plaintiff." We find no prejudicial error and believe it is properly in the record for con-

495

sideration by this court in passing upon the merits of this appeal.

In plaintiff's written claim for benefits, submitted by her to defendant, she states that the commencement of her illness was November, 1955, and that a physician "first" treated her then, with subsequent treatments "about once every two months."

The statement completed by the attending physician, who performed the hysterectomy, shows he first attended plaintiff in November, 1955; that the nature of her illness was "fibromyomatous uterus"; and in response to the question, "If illness, how long prior to your first examination was the disease contracted or begun?" he answered, "Bleeding for 6 mo." He further answered that he had treated her in his office once every two months.

Defendant contends that the summary judgment in favor of plaintiff was improper because the admitted facts defeat her claim. Plaintiff contends the principal question is the "construction of the exclusion clause here in question."

■ As stated by plaintiff, "ambiguous provisions or equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured." Mosby v. Mutual Life Ins. Co. of New York, 405 Ill 599, 607, 92 NE2d 103 (1950).

However, as defendant argues, the rule to be applied here is stated in Lundquist v. Illinois Life and Acc. Ins. Co., 24 Ill App2d 316, 323, 164 NE2d 293 (1960):

"The usual rule of liberal construction of ambiguous provisions of insurance policies in favor of the insured must yield to rules of reasonable construction, and such does not permit the straining of plain, unambiguous language to create a supposed ambiguity where none in fact exists; where the provisions are plain and certain there is no room for construction, and

the language should be taken in its plain, ordinary, popular sense."

. It is plaintiff's theory that the phrase "sickness contracted or commencing prior" to the policy is ambiguous and must be construed to mean a "sickness" with attendant disability—that there can be no exclusion of benefits because of a prior sickness without prior disability. The principal case cited in support of this theory is Milam v. Norwich Union Indemnity Co., 107 W Va 574, 149 SE 668, 669 (1929), where the court said:

"A liberal construction of the term 'sickness contracted,' as used in this policy, requires that it be applied to the time when the malady was sufficiently active to disable the patient, and not to the time when it originated."

We do not agree with the pronouncements of this case. The factual situation in the instant case is not similar. There is nothing in this record to show that plaintiff's condition at any time prior to the operation "was sufficiently active to disable the patient," or to prevent her from performing her usual occupation.

As argued by plaintiff, we agree that "sickness" is a variable term. However, we believe it is used generically in describing a diseased condition, illness or ill health; also, that the word "condition," as used to describe a state of being, is used synonymously with "sickness" in discussing and construing an insurance policy. Both words must be read in context and taken in their ordinary and popular sense, as so used.

■   As contended by defendant, many physical conditions which are deemed "sickness" are not disabling. A person may be "very sick" and still carry on with his daily activities. We conclude the construction contended for by plaintiff, that "sickness is defined as a condition interfering with one's usual avocations," should not be used in construing the instant

497

policy. (Northwestern Mut. Life Ins. Co. v. Wiggins, 15 F2d 646, 648 (9th Cir 1926); Rocci v. Massachusetts Acc. Co., 226 Mass 545, 116 NE 477 (1917).) Such a construction may be a liberal one for plaintiff, but it would be a most narrow one in many other situations.

■ We do not believe the word "sickness," as used here, means only the kind of disability which prevents one from pursuing his daily activities, or when the patient is incapacitated from pursuing his daily routine. We believe the true test to be used here is that set forth in Craig v. Central Nat. Life Ins. Co., 16 Ill App2d 344, 354, 355, 148 NE2d 31 (1958), where, in referring to policy provisions precluding recovery for sickness originating before a prescribed time, it is said:

"The rule would appear to be that the origin of said sickness is deemed to be the date it first becomes manifest or active or when there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease."

Similar statements are found in 53 ALR2d 689; Allied Reserve Life Ins. Co. v. Pierson, 357 P2d 205, 211 (Okla 1960); Valencia v. Continental Cas. Co., 127 Neb 820, 257 NW 57 (1934); National Cas. Co. v. Hudson, 32 Ala App 69, 21 So2d 568 (1945); Union Bankers Cas. Ins. Co. v. May, 227 Miss 881, 87 So2d 264 (1956); Vidrine v. Reserve Life Ins. Co., 58 So2d 251 (La App 1952).

■ From this record, it is obvious that the uterus of plaintiff was in a diseased condition prior to the time she was issued a certificate of insurance in December, 1955; that she had knowledge of this condition and was treated for it in November, 1955; and that it was this diseased condition of the uterus that caused her hospitalization and operation in August, 1956.

■ We conclude that the exception or limitation placed in the policy means, and was intended to mean, that, if the insured had need of hospital, surgical or nursing care, caused by some "sickness" or "condition" from which she was suffering prior to the time the policy was issued to her, the defendant would not be responsible for the expenses incurred, except for such loss occurring two years after the effective date of the policy.

■ For the reasons stated, the judgment for plaintiff is reversed. As the admitted facts in this record support defendant's denial of liability, we believe that pursuant to the authority given to this court in Section 92(1)(e) of the Civil Practice Act (Ill Rev Stats 1957, c 110), judgment for defendant should be entered here.

Reversed. Judgment for defendant entered here.

BURMAN, P. J. and ENGLISH, J., concur.