MARJORIE WALLACE, Plaintiff-Appellee, *v.* BLUE CROSS HOSPITAL SERVICE, INC., Defendant-Appellant.

(No. 72-289;

Fifth District—August 8, 1973.

Schlafly, Godfrey & Fitzgerald, of Alton, and Keefe, Schlafly, Griese-dieck & Ferrell, of St. Louis, Missouri, (J. F. Schlafly and F. M. Lawder, of counsel,) for appellant.

Chapman, Talbert & Chapman, of Granite City, (James F. Thebeau, Jr., of counsel,) for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal in a small claims action instituted by the plaintiff-appellee against the defendant-appellant insurance company to recover hospital expenses. The trial court, sitting without a jury, entered judgment for the plaintiff-appellee. Following denial of a motion to set aside and vacate the judgment, notice of appeal to this court was filed on August 4, 1972.

Marjorie Wallace, the appellee, was employed by Venture Stores in

March 1969. Her employment continued until voluntarily terminated on March 12, 1971. While an employee of Venture Stores she was provided with group hospitalization coverage, originally through Travelers Insurance Company. On November 1, 1970, this group coverage was changed to Blue Cross-Blue Shield.

The record shows that appellee knew when she voluntarily left Venture her group hospitalization coverage would end. She was told by Venture at that time that she could apply for individual or Direct Pay Membership with the appellant. She was told and understood that membership in the Direct Pay Membership plan would be for the quarter April 1, 1971, to July 1, 1971.

From May 14, 1971, to May 29, 1971, appellee was hospitalized in St. Elizabeth's Hospital in Granite City, Illinois. The admitting diagnosis for this period of hospitalization, made by Dr. W. W. Bowers, her family physician, stated:

"ADMITTING DIAGNOSIS: Post laminectomy syndrome. Possible recurrent disc.

This 44 year old female is admitted again to the hospital because of severe pain in her back with radiation into both legs, especially the right leg. The patient has had numerous previous hospitalizations with similar complaints. She was hospitalized from 9-27-70 to 10-3-70 and had intensive physiotherapy to her back with improvement. The patient had a laminectomy and removal of scar tissue, disc material on 3-29-65 and the patient had had previous admission in April 1964 at which time the herniated disc at the level of L5-S1 was removed. The past history is given."

It was for this hospitalization that the claim against the appellant was made.

Though there is some conflict in the testimony regarding the date on which the appellee remitted her premium for coverage under the Direct Pay Membership plan for the period April 1 to July 1, we think it established that this premium was remitted on June 10, 1971. This was after the period of her hospitalization and one day prior to receipt of her claim by the appellant. The late premium payment was accepted by appellant, however, and there is no question about the Direct Pay Membership plan being in effect for the appellee during this period. Again there is conflict in the testimony regarding receipt by the appellee of her Direct Pay Membership certificate. This certificate states the terms and conditions of membership. In view of conflicting answers given by the appellee; in view of the statement by the appellant that the certificate was enclosed with a copy of the bill and mailed to the appellee; and in view of the fact that a copy of the bill was returned

with her payment, it is not unreasonable to assume that the appellee received a copy of the certificate.

The Direct Pay Membership certificate provides (section V. B.) that coverage does not include hospital care during the first year after the effective date of the participant's current membership for:

"1. Any illness or condition (whether or not known to the participant) which is the same as or develops from an illness, condition, or symptom existing before said effective date, or

2. Any illness or condition which is the same as or develops from an illness, condition or symptom for which the participant was under a physician's care or for which medical or surgical care was recommended before said effective date."

This section of the certificate further provides that:

"A participant, continuously enrolled, who has an aggregate of one year's membership, under this Certificate, or under a prior membership which also provided benefits for prior conditions after a waiting period, shall be deemed to have satisfied the one-year waiting period hereunder."

Appellant argues that the certificate constitutes its contract with appellee and that provisions in the certificate preclude recovery by the appellee because she was in the hospital for a pre-existing condition, and her total time of coverage by the appellant is less than one year since coverage by appellant under its group plan at the time appellee was employed by Venture commenced only in November 1970.

Appellee argues that the certificate does not constitute her contract with appellant; that certain statements in the Direct Pay Membership certificate and in an information leaflet to members, coupled with verbal statements to appellee by personnel of the appellant that she would be covered, have the effect of continuing the same coverage she had under the group plan when she was employed by Venture. Appellant and appellee agree that under this latter plan hospitalization or treatment for a pre-existing condition, though occurring during the first year of coverage, does not prevent recovery. It should be noted that a copy of the group plan was not put in evidence and is not in the record.

The trial court found for the appellee in the amount of $989.10, stating that there was continuous coverage under Blue Cross during her employment and thereafter until July 1, 1971, and that under such coverage the less restrictive provisions of the Venture group plan applied.

■■■ We disagree with the finding of the trial court. We are mindful of the accepted rule established by a long line of Illinois cases that the reviewing court does not disturb findings of fact and the resolving of

conflicts in evidence by the trial court unless the judgment or order appealed from is against the manifest weight of the evidence. In support of this principle appellee cites *Croft v. Lamkin,* 112 Ill.App.2d 321, 251 N.E.2d 88; and *Marine Trust Co. of Buffalo v. Reynolds,* 308 Ill.App. 595, 32 N.E.2d 366. But our Illinois courts have also recognized that though a strong presumption exists in favor of the trial court's findings, it is a rebuttable presumption. Illinois Supreme Court Rule 366(b)(1)(ii) (Ill. Rev. Stat., ch. 110A, sec. 366(b)(1)(ii)) states:

> "Any error of fact, in that the judgment or order appealed from is not sustained by the evidence or is against the weight of the evidence, may be brought up for review."

In *Reed v. Washington National Insurance Co.,* 6 Ill.App.2d 49, 126 N.E.2d 517, the plaintiff applied for reinstatement of a lapsed policy. To reinstate she was required to present evidence "* * * satisfactory to the company of the sound health of the insured * * *." Evidence submitted to the trial court showed that she was not in sound health. Nevertheless the trial court found for the plaintiff on the theory that she did not know that she was in bad health and thus did not intentionally mislead the insurer. The reviewing court, upon examination of the record, concluded that she did know that she was not in sound health at the time of applying for reinstatement and reversed the judgment of the lower court.

In *Friedman Electric Co. v. St. Clair County Housing Authority of East St. Louis,* 23 Ill.App.2d 16, 161 N.E.2d 473, the court states:

> "If, from a consideration of the whole record, it appears to us that the evidence does not justify the judgment, it is our plain duty to reverse."

Almost identical language is used in *Sharkey v. Sisson,* 310 Ill. 98, 141 N.E. 427. We conclude that the rule announced in these latter two cases, in the *Reed* case, and in Supreme Court Rule 366 are applicable in the instant case.

Appellee had continuous coverage until July 1, 1971, first under a group plan while she was employed by Venture and then under her Direct Pay Membership certificate from April 1 to July 1. Though we do not know what the terms and conditions under the group plan were, we do not agree that as a matter of contract the same terms and conditions of coverage which applied under the group plan were continued when she left Venture Stores and secured coverage under the Direct Pay Membership plan.

■■ In the absence of some ambiguity which we would be compelled to resolve in favor of the insured and in the absence of facts showing that she has been mislead by being wrongly or inadequately informed,

her rights must be determined by applicable contractual provisions, namely those contained in the Direct Pay Membership certificate. It should be noted that at the time appellee stated that she was told by employees of appellant that her claim would be paid she had previously remitted her premium and had been released from the hospital. Any rights she had were determinable from facts then in existence. Statements made by agents of an insurance company must be considered in context, and an "off the cuff" incorrect statement by an agent who is not familiar with the existing contractual status of his company and a particular insured does not change the contract between his company and the insured.

Though the informational leaflet referred to in the record is not part of the insurance contract, the trial court based its decision in part on the following language from the leaflet:

"One of the big advantages of Blue Cross-Blue Shield is that you can take it with you wherever you go. Your membership can be transferred with continuous protection to the plan serving your community."

But this informational leaflet goes on to say:

"The enclosed statement of dues will cover the period needed to complete transfer. During this time your coverage will be *that of the Direct Payment program* as explained in the enclosed certificate." (Emphasis added.)

We interpret this to mean that though one's membership can be transferred with continuous protection, identical policies or types of coverage will not necessarily be transferred; that continuous coverage does not have to be identical coverage.

In support of its decision the trial court cited the section on conversion privilege (VIII A) of "Terms and Conditions of Membership" under the Direct Pay Membership certificate. A careful reading of this section shows that it does not apply to the conversion rights of a participant but provides that an eligible dependent of a participant may within 30 days after termination of the participant's coverage, death of the participant member, or termination of his own eligibility to be covered as a dependent, apply for membership in Blue Cross Hospital Service.

■■■ While we recognize the rule that ambiguous or equivocal expressions whereby an insurer seeks to limit its liability will be construed strongly against the insurer and liberally in favor of the insured (*Mosby v. Mutual Life Insurance Co. of New York*, 405 Ill. 599, 92 N.E.2d 103; *Lenkutis v. New York Life Insurance Co.*, 374 Ill. 136, 28 N.E.2d 86), we are also mindful that this rule does not authorize a distortion of lan-

guage or the exercise of inventive powers for the creation of ambiguity where none exists (*Crosse v. Supreme Lodge Knights and Ladies of Honor*, 254 Ill. 80, 98 N.E. 261) and that it must yield to reasonable construction (*Lundquist v. Illinois Life and Accident Insurance Co.*, 24 Ill.App.2d 316, 164 N.E.2d 293; *Broccolo v. Horace Mann Mutual Casualty Co.*, 37 Ill.App.2d 493, 186 N.E.2d 89.) We find no ambiguity in the contractual provisions applying to the appellee and no evidence of acts on the part of the appellant which would prevent the language of the certificate from applying.

The appellee entered a new contract with the appellant when she entered the Direct Pay Membership plan, and the terms and conditions of membership in her certificate are binding. One of the conditions is that coverage does not extend during the first year to hospitalization for a pre-existing condition. The record shows that she was admitted for a pre-existing condition before the certificate, coupled with her prior coverage at Venture, had been in force for one year.

Judgment reversed.

EBERSPACHER, P. J., and CREBS, J., concur.