BETTE WINKS *et al.*, Plaintiffs-Appellees, *v.* THE BOARD OF EDUCATION OF NORMAL COMMUNITY UNIT SCHOOL DISTRICT NO. 5 OF McLEAN COUNTY, Defendant-Appellant.

Fourth District No. 14846

Opinion filed November 28, 1978.

GREEN, P. J., specially concurring.
TRAPP, J., dissenting.

Martin L. O'Connor and Thomas A. Eckols, both of Fleming, Messman, Lapan & O'Connor, of Bloomington, for appellant.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This is an appeal from the order of the circuit court of McLean County which found that the plaintiffs were entitled to receive paid sick leave for the period each plaintiff was unable to work due to childbirth and the period of recovery following the birth. The defendant, Board of Education of Normal Community Unit School District No. 5 of McLean County, Illinois (Board), appeals from the trial court's findings and judgment.

The facts are not in dispute and reveal that the pregnancy, delivery, and recovery of each of the plaintiffs (female teachers in Community District No. 5, McLean and Woodford Counties, Illinois) were very similar. Each informed the Board of her pregnancy. Each presented a doctor's certificate stating the periods during which she would be unable to teach due to delivery and childbirth. Each had a normal pregnancy, gave birth to a healthy baby by normal delivery, and had an uneventful postpartum period. Each, at some point in time, requested a paid sick leave for the period which her doctor certified her as incapable of teaching due to childbirth and the recovery from childbirth. These claims were denied by the Board.

After denial, the plaintiffs filed this cause of action to recover paid sick leave benefits at their respective salary rates for teaching days missed by each plaintiff for a period of time beginning shortly before delivery of each plaintiff's child and extending to the time each returned to work after being certified to do so by her respective physician. Following hearings on this matter, the trial court entered judgment on behalf of the plaintiffs finding that the sick leave policy of the Board was not applied in an evenhanded manner.

At the outset, it should be noted that this case deals exclusively with the interpretation of a State statute and the Board policy adopted pursuant to that statute regarding sick leave for teachers as opposed to the issue of sex discrimination under Federal or State law which was discussed in two recent United States Supreme Court decisions. *General Electric Co. v. Gilbert* (1976), 29 U.S. 125, 50 L. Ed. 2d 343, 97 S. Ct. 401; *Nashville Gas Co. v. Satty* (1977), 434 U.S. 136, 54 L. Ed. 2d 356, 98 S. Ct. 347.

The pertinent provisions of the statute in question are as follows:

"The school boards of all school districts, including special charter districts, shall grant their full-time teachers and other

employees sick leave provisions not less in amount than 10 days at full pay in each school year. If any such teacher or employee does not use the full amount of annual leave thus allowed, the unused amount shall accumulate to a minimum available leave of 90 days at full pay, including the leave of the current year. *Sick leave shall be interpreted to mean personal illness, quarantine at home, or serious illness or death in the immediate family or household.* The school board may require a physician's certificate, ° ° ° as a basis for pay during leave after an absence of 3 days for personal illness, or as it may deem necessary in other cases." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 122, par. 24—6.

This case hinges upon the interpretation of the emphasized portion of that statutory provision. Although the plaintiffs do not claim pregnancy and childbirth is in and of itself an illness or a sickness, they do argue that they are entitled to be paid accumulated sick leave during the time they are medically incapacitated and unable to work. The Board, on the other hand, maintains that pregnancy is not an illness or sickness as intended in the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 1—1 *et seq.*), and that the plaintiffs are not entitled to be paid sick leave for the period of absence during their pregnancy and childbirth.

Both parties have relied upon definitions to support their respective positions since neither of the terms "sickness" or "illness" is defined in the School Code. The plaintiffs note that a definition of sickness is "[a]ny affection of the body which deprives it temporarily of the power to fulfill its useful functions." (Black's Law Dictionary 1551 (4th rev. ed. 1968).) Black's defines "illness" as "an ailment of such a character as to affect the general soundness and health; not a mere temporary indisposition, which does not tend to undermine and weaken the constitution." (Black's Law Dictionary 1551 (4th rev. ed. 1968).) The Board notes that "illness" is defined as "a bad or unhealthy condition of the body." Webster's New Collegiate Dictionary 1127 (1975).

Testimony at the bench trial from the plaintiffs' attending physicians indicated that all agreed that a fair and accurate definition of the term "illness" would be an unhealthy condition of the body. One of the doctors, however, responded that an illness is a time when the individual cannot continue his everyday work without being incapacitated to some extent.

A recent case has discussed the sick leave provisions of section 24—6 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—6). (*Deizman v. Board of Education* (1977), 53 Ill. App. 3d 1050, 369 N.E.2d 257.) In *Deizman*, the plaintiff, who was ill, was denied sick leave benefits while incarcerated on a manslaughter charge. The First District Appellate Court

affirmed the denial of benefits and in reaching that decision discussed the interpretation of section 24—6.

> "Lastly, implicit in section 24—6 is that fact that illness alone will not suffice to qualify a teacher for sick leave; that illness must prevent him from performing his teaching duties. We believe this legislative intent to be obvious from a consideration of the statute as a whole, particularly article 24 wherein this section appears, which is concerned entirely with the employment of teachers as it relates to their teaching duties." (53 Ill. App. 3d 1050, 1053, 369 N.E.2d 257, 259.)

The court concluded that the apparent legislative intent required as a condition precedent for obtaining sick leave benefits that a teacher be otherwise available for duty *but for* his illness.

Considering the definitions of sickness and illness in conjunction with the discussion in *Deizman,* it is apparent that the plaintiffs were suffering from a personal illness and entitled to use their accumulated sick leave since they were unable to fulfill their usual functions because of their weakened condition prior to and for a period of time following childbirth. Moreover, it is evident that the plaintiffs were available for duty but for the fact of their delivery and recovery from childbirth.

The result we reach based on the interpretation of the statute is clearly in accord with the Board's policy as manifested by other instances where sick leave was granted for pregnancy-related absences. Mrs. Bonnie Gore testified that she was granted 10 days' sick leave at the end of the 1976-77 school term for the time she was away from her teaching job due to the birth of her child. The Board attempts to distinguish Mrs. Gore's pregnancy and delivery from the other plaintiffs by noting that the fetal heart had stopped and that Caesarean delivery was performed in order to save the life of the child. The Board argues that the stoppage of the baby's heart was a complication of pregnancy and an unhealthy condition which warranted the granting of sick leave. As a result, the Board contends that the decision to grant sick leave instead of maternity leave for cases like Mrs. Gore's is not a failure to apply its sick leave policy in an evenhanded manner. This argument, however, is not persuasive since the difference between Mrs. Gore's delivery and the plaintiffs' deliveries is, at best, one of degree only.

The testimony of Bart Williams, a teacher employed by the Board, showed a further inconsistency in the sick leave policy. Williams testified that he was granted two days' paid sick leave to be with his wife during the delivery of their child as well as to make arrangements for taking the baby home. Williams noted that the delivery was normal and that there were no complications. The Board attempts to distinguish this situation

from the plaintiffs' cases by pointing out that the assistant principal who granted the leave admitted that the granting of the sick leave was a mistake. The fact remains, however, that Williams, who was not sick or ill, was paid two days' sick leave as a result of his wife's pregnancy and delivery.

Other testimony revealed that sick leave had been granted for routine eye, dental, and medical examinations. Moreover, DeWitt Swanson, a member of the school board, testified that, to his knowledge, the Board had never denied sick leave to anyone who was under a doctor's orders not to return to work other than for pregnancy.

Clearly, there is an inconsistency in the application of the Board's sick leave policy as evidenced by the sick leave granted for Williams and for Gore and denied for the plaintiffs. The decisive factor, however, in this case is the fact that the medical evidence clearly showed that the plaintiffs were unable to perform their teaching duties before and after childbirth. Consequently, the sick leave provisions of section 24—6 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—6) required that the Board pay the plaintiffs sick leave for the reasonable period of time they were incapacitated due to the latter stages of pregnancy, childbirth, and the following period of recovery.

For the foregoing reasons, the order of the circuit court of McLean County is affirmed.

Affirmed.

Mr. PRESIDING JUSTICE GREEN, specially concurring:

I agree that teachers unable to perform their usual functions because of their weakened condition prior to and for a period of time after childbirth are eligible for sick leave within the meaning of section 24—6 of the School Code. For that reason, I, too, would affirm.

I do not agree that any isolated actions by the defendant in granting such leave to others would be of sufficient magnitude to require granting of sick leave to plaintiffs if their condition did not meet the requirements of section 24—6.

Mr. JUSTICE TRAPP, dissenting:

Initially, we note that the misapplication of the sick leave provisions by the school administration as recited in the principal opinion is not a sound judicial basis for the interpretation of the statute passed by the legislature.

We undertake to construe the language found in section 24—6 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 24—6):

> "Sick leave shall be interpreted to mean personal illness, quarantine at home, or serious illness or death in the immediate family or household."

Such was the precise language employed by the legislature in adopting the statute in 1947 (Ill. Rev. Stat. 1949, ch. 122, par. 22—6), and in effect since that date.

Pursuant to the statute, defendant adopted a sick leave policy which was supplemented by a maternity leave policy. In *Broccolo v. Horace Mann Mutual Casualty Co.* (1962), 37 Ill. App. 2d 493, 186 N.E.2d 89, the court considered the word "sickness" as used in an exclusionary clause of an insurance policy. The court stated:

> "As argued by plaintiff, we agree that 'sickness' is a variable term. However, we believe it is used generically in describing a diseased condition, illness or ill health; also, that the word 'condition,' as used to describe a state of being, is used synonymously with 'sickness' in discussing and construing an insurance policy. Both words must be read in context and taken in their ordinary and popular sense, as so used." 37 Ill. App. 2d 493, 497, 186 N.E.2d 89, 91.

It would appear that by the very limited duration of the annual sick leave provided that the legislature did not contemplate the extension of sick leave with full pay to cover the post-pregnancy period of six to eight weeks required for recuperation as described by the physicians testifying here. The medical testimony of record is consistent in reflecting medical opinion that a normal pregnancy is neither an illness nor a sickness. Similarly, the period of recuperation following a normal delivery is not deemed an illness or sickness in a medical context. It is only when the pregnancy suffers complications deviating from the normal that the condition is deemed or determined to be an illness.

Each of the plaintiffs except one was described as having enjoyed a normal pregnancy and recovery. The excepted plaintiff, Winks, suffered some varicosity during a period between December 8, 1973, and January 2, 1974. This action was filed in 1977. She is not seeking to recover for a pregnancy-related illness however, but is seeking to recover in the context of a paid maternity leave. There is a clear-cut distinction between the concept of maternity leave as a personal illness and a pregnancy-related illness. *Rentzer v. Unemployment Insurance Appeals Board* (1973), 32 Cal. App. 3d 604, 108 Cal. Rptr. 336; *Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination* (Mass. 1978), 375 N.E.2d 1192.

*Deizman v. Board of Education* (1977), 53 Ill. App. 3d 1050, 369 N.E.2d 257, is cited as authority. It does not, in fact, reach the issue here. That opinion states:

> "While the Board would apparently contest the fact that plaintiff was ill during his incarceration, we note no reason in the record

before us to question his illness." 53 Ill. App. 3d 1050, 1053, 369 N.E.2d 257, 259.

While the opinion accepted as a fact that the plaintiff was ill within the meaning of section 24—6 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 24—6), it found that the plaintiff was not prevented from performing his teaching duties by reason of illness. The issue here is whether the plaintiffs were prevented from performing their teaching duties by an illness within the meaning of the statute. It is apparent from the record that they were not.

The judgment of the trial court should be reversed.