HARRY BRODSKY, Plaintiff in Error, *vs.* SAM FRANK *et al.* Defendants in Error.

*Opinion filed December 18, 1930.*

GALLAGHER, SHULMAN & ABRAMS, for plaintiff in error.

DAVID K. TONE, and BLANKSTEN, FREEMAN & FREEMAN, for defendants in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, Harry Brodsky, in the superior court of Cook county, began an action of trespass on the case against Sam Frank, Joe Singer, Joseph Smith, Morris Siegel and the Textile Headwear Company, a corporation. The case was tried by a jury. A verdict was returned in favor of Frank and against the other defendants in error for $30,000. A *remittitur* of $10,000 was entered and judgment was rendered for the balance. The Appellate Court for the First District reversed the judgment upon the ground that the declaration was predicated upon the theory that plaintiff in error was induced to enter into a business arrangement with defendants in error by reason of false and fraudulent representations made by defendants in error and known by them to be false; that the evidence fails to show any false representation as to any existing fact; that the most that can be said in support of the contention of plaintiff in error is that there may have been a misrepresentation as to a matter of intention which may have influenced the transaction, but that a representation as to something to be done in the future is not such a fraud in law as warrants a recovery on the ground of misrepresentation and fraud, and that the fraud must be complete at the time of the transaction and not be an intention to commit a fault in the future. The case comes to this court upon a writ of *certiorari*.

The first additional count of the declaration alleged that on May 16, 1925, plaintiff in error was engaged in manufacturing hats and caps; that he was the owner of a large quantity of fixtures, machinery, appliances and merchandise used in his business and was doing a large business, with extensive good will and many customers; that defendants

in error Frank, Singer, Smith and Siegel were at the same time officers and agents of the Textile Headwear Company, a corporation, engaged in the same line of business; that defendants in error individually, and said corporation by its agents and officers, for the purpose of cheating and defrauding plaintiff in error out of his business and acquiring the same for themselves, falsely, fraudulently and maliciously represented to him that if he would turn over to defendants in error his fixtures, machinery, appliances, goods, merchandise, good will, organization, customers and accounts and combine the same with the business of the Textile Headwear Company and devote his efforts to the combined business up to December 31, 1925, he would receive from defendants in error one-fourth of the capital stock of the Textile Headwear Company; that on the faith of said representations, relying thereon and believing the same to be true, plaintiff in error turned over his business to defendants in error and combined his efforts with them in and about the business of the Textile Headwear Company; that the representations made by defendants in error were false and untrue, were not made in good faith or with any intention of being carried into effect, were not made with any intention to pay or deliver to plaintiff in error one-fourth of said stock, but were made with the intention of inducing him to rely upon said statements and believe them to be true and to deliver his business to defendants in error so they could willfully, maliciously and fraudulently cheat and defraud him out of the same, and after so falsely, fraudulently and maliciously cheating and defrauding him out of his business they refused to give him said capital stock or any other consideration and appropriated and confiscated to their own use said business, fixtures, etc. The second additional count was for fraud and deceit and contained substantially the same allegations as the first additional count, with the exception of the allegations as to the confiscation of the property. The third additional count contained most

of the allegations of the first, and alleged that plaintiff in error was in a competitive line of business with defendants in error, and that for the purpose of acquiring possession of the business and preventing plaintiff in error from having the same, defendants in error did then and there seize possession of and appropriate to their own use and benefit and refused to return to the plaintiff in error his property.

The evidence shows that plaintiff in error was forty-three years old. He had learned the cap-making business in Russia and was an expert cap-cutter. He came to this country eighteen years ago and followed his trade until he became foreman of a large establisment. During the time he worked at his trade he became acquainted with defendants in error. In 1919 he started business for himself, with Joseph Steinberg as a partner. The following year the business was incorporated as the Easter Hat and Cap Company, with a capital of $20,000. Plaintiff in error owned 77 shares, Steinberg owned 77 shares and Sam Klitnick owned 46 shares. Plaintiff in error testified that in May, 1925, he purchased all of the stock of his partners. In contradiction of this testimony, defendants' exhibit 5 is a copy of a report sworn to by plaintiff in error on July 27, 1925, and sent to the Secretary of State, showing that the stockholders at that time were plaintiff in error, Saul Brodsky and Max Shulman. The certificate stated that the corporate debts and liabilities were $3993.21 and its assets were $9093.21, including $1000 of machinery and $2500 of inventoried assets. This corporation was dissolved by decree of court on account of its failure to file its annual report and pay its franchise tax, on June 7, 1927. The evidence shows that the Easter Hat and Cap Company acquired patents for devices connected with the manufacture of caps. One was called an adjustable cap and the other a steel-edged visor. These caps were made by special machinery and sold at a higher price than other caps. Plaintiff in error contends that on May 16, 1925, his business was a go-

ing concern, with various employees, and salesmen selling his products, but there is evidence which shows that at that time he had stored the machinery, a small quantity of woolen goods and some hats and caps at 412 South Market street, in Chicago; that orders received by him were made up by other concerns; that he had some salesmen on the road who were selling his products on commission but in connection with other lines carried by them, and that he had tried to consolidate with another company but failed, and he opened negotiations with defendants in error for a consolidation. In June, 1925, Frank, Singer, Smith and Siegel were officers and directors of the Textile Headwear Company and each drew a salary of $60 per week. This corporation was engaged in the manufacture of hats and caps. Plaintiff in error testified that the first week in June, 1925, he had a talk with the four defendants in error, and they agreed that he was to bring his merchandise and machinery over to the Textile Headwear Company and was to work there until December, 1925, when an appraisement was to be made of the property of both corporations. If the appraisement showed that plaintiff in error's property was worth less than one-fourth of the property of defendants in error he was to pay the difference and if it was worth more defendants in error were to pay the difference, and plaintiff in error was to be an equal partner with defendants in error. Plaintiff in error testified that in November, 1925, he severed his connection with the Textile Headwear Company under the following circumstances: Smith asked him one day why an order was not cut, and plaintiff in error replied that Singer told him not to cut it; that Singer said, "You're a liar," and plaintiff in error replied, "I'm not a liar—you're a liar;" that Singer took a knife and started at plaintiff in error; that Smith came between them, and when plaintiff in error came to he was on the floor, his face was wet and he had a sore on his head; that later Singer told him he could not come back to the factory, and he then left and

took with him his mailing list and some of his books; that he did not take his machinery because he did not have a place to put it, and that he later went back and demanded the machinery and defendants in error refused to deliver it to him.

The evidence on behalf of defendants in error is that they never promised to take plaintiff in error in as an equal partner or to give him one-fourth or one-fifth of the capital stock of the Textile Headwear Company for his assets and business; that plaintiff in error suggested that he bring over such merchandise as they could use and that he would start as a cutter for the Textile Headwear Company; that he was to be paid the same salary as defendants in error and at the close of the year they were to determine whether it was mutually agreeable that he become a part owner, and that he stated a number of times to Smith and Siegel that he had evidence that Singer was stealing from the company. They asked him to produce his evidence. He said he would produce it in ten days but failed to do so, and he then left the place and never came back. They denied he was assaulted by any of them or that they refused to give him his machinery, and they produced a copy of a letter sent to him in December, 1925, asking him to take away his machinery.

There are marked variances between the allegations of the declaration and the evidence of plaintiff in error, which is the principal evidence offered to support the case. The declaration alleged that plaintiff in error was to turn over to defendants in error all of his machinery, stock on hand and manufactured products and accounts, and on December 31, 1925, was to receive one-fourth of the capital stock of the Textile Headwear Company. Plaintiff in error testified that he was not to turn over his accounts, manufactured products or stock on hand; that he collected $10,000 of accounts, paid the debts of his corporation, amounting to $5000 or $6000, and appropriated the balance

to his own use; that the greater part of the merchandise and manufactured hats and caps were sold by him and the proceeds appropriated to his own use. He did not testify that on December 31 he was to receive one-fourth of the stock of the Textile Headwear Company, as alleged in the declaration, but he did testify that at that time an appraisal was to be made of the property of each corporation and an adjustment made. At one time he testified that he was to receive one-fourth of the stock of the Textile Headwear Company, and at other times he testified he was to receive one-fifth of the stock. He testified that twenty machines were used in his business, but only eight or nine of them were ever delivered to defendants in error. At the close of the evidence these variances were called to the attention of the court and a motion was made to direct a verdict, which motion was overruled. A plaintiff must prove the case alleged in his declaration. He can recover only on the allegations of the declaration and not on a case not alleged, even though such a case is established by the evidence. A defendant has a right to know what the charges are, in order to properly make a defense and to prevent his being taken by surprise by evidence on the trial. (*Feder* v. *Midland Casualty Co.* 316 Ill. 552.) The question of a variance was properly raised in the trial court and the motion to direct a verdict should have been sustained. *Wabash Railroad Co.* v. *Billings,* 212 Ill. 37; *Buckley* v. *Mandel Bros.* 333 id. 368.

The declaration alleged that plaintiff in error was the owner of the property in question and of the cause of action upon which the suit was based. The evidence shows that the Easter Hat and Cap Company was a corporation organized under the laws of this State with three stockholders, including plaintiff in error, who was also an officer. Plaintiff in error testified that in May, 1925, he purchased the stock of the other two stockholders and at the time the suit was brought was the owner of all of the stock. His sworn statement made to the Secretary of State in July,

1925, contradicts his statement. The sale of all of the stock of a corporation is, in legal effect, a sale of all of its assets; (*Joseph* v. *Canfield*, 292 Ill. 101; *Benedict* v. *Dakin*, 243 id. 388;) but the fact that one of the stockholders of a corporation becomes the owner of all of the stock does not authorize him to begin a suit in his own name on a cause of action belonging to the corporation. (*Randall* v. *Dudley*, 111 Mich. 437; *Button* v. *Hoffman*, 61 Wis. 20; *Winona Co.* v. *St. Paul Co.* 23 Minn. 359; *Bidwell* v. *Pittsburg Railroad Co.* 114 Pa. 535; 14 Corpus Juris, 924.) The corporation was dissolved in June, 1927. This suit was started in June, 1926. Section 14 of chapter 32 of our statutes (Smith's Stat. 1929, p. 725,) provides that "all corporations organized under the laws of this State, whose powers may have expired by limitation or otherwise, shall continue their corporate capacity for two years for the purpose only of collecting debts due such corporation and selling and conveying the property and effects thereof. Such corporations shall use their respective names for such purposes and shall be capable of prosecuting and defending all suits at law or in equity." If any damages were occasioned by the actions of defendants in error they were to the corporation and not to plaintiff in error. *Life Association of America* v. *Fassett*, 102 Ill. 315.

Plaintiff in error insists that the first additional count of his declaration stated a good cause of action in tort for conversion of the property; that the second additional count stated a good cause of action for fraud and deceit, and that the third additional count stated a good cause of action for conspiracy to ruin plaintiff in error's business. A false representation within the meaning of the law, in order to constitute a cause of action, must be a representation as to an existing or past fact and not a mere promise to do some act in the future. A failure to comply with a future promise does not constitute fraud. The general rule is that to amount to fraud there must be a willful, false representa-

tion as to an existing or past fact. (*Luttrell* v. *Wyatt,* 305 Ill. 274; *Keithley* v. *Mutual Life Ins. Co.* 271 id. 584; *Grubb* v. *Milan,* 249 id. 456; *Miller* v. *Sutliff,* 241 id. 521; *People* v. *Healy,* 128 id. 9; *Murphy* v. *Murphy,* 189 id. 360.) Under these authorities the second additional count did not state a cause of action for fraud and deceit upon which a verdict could be sustained for the reason that the count alleged only promises to be fulfilled in the future, and there was no allegation of a promise of an existing fraudulent fact which induced the transaction in question.

The claim that the first additional count stated a good cause of action in tort for conversion of the property is based upon the allegations of the declaration that after so falsely cheating and defrauding plaintiff in error out of his property, defendants in error refused to pay for the same and did appropriate and confiscate it to their own use. The claim that the third additional count states a good cause of action for a conspiracy to ruin the business of plaintiff in error is based upon the allegation that plaintiff in error was in a competitive line of business with defendants in error, and that for the purpose of acquiring possession of said business and preventing plaintiff in error from having the same, defendants in error did then and there seize possession of and appropriate said business to their own use and benefit. The charges in these two counts that defendants in error did appropriate and confiscate the property to their own uses and benefit and that they seized possession of and refused to return the property to plaintiff in error must be read in connection with the other averments in the same counts that the property was voluntarily turned over by plaintiff in error under an agreement that defendants in error were to pay for the property in December, 1925. In *People* v. *Healy, supra,* the declaration charged that defendant falsely and fraudulently, for the purpose of inducing plaintiff to part with the possession of his goods, represented that defendant would pay for the goods their rea-

sonable value; that said promise and representations of defendant were false and were so known to be by him, and were made with the fraudulent purpose of obtaining possession of the goods without paying therefor; that at that time defendant was insolvent and was aware of that fact, and that he never paid for the goods but got them from plaintiff with the fraudulent purpose of not paying for them and of cheating and defrauding plaintiff. On page 18 this court said: "We are of opinion that the allegations of the declaration were insufficient to enable plaintiffs therein to maintain an action for a tort. Their action should have been in assumpsit for the price and value of the goods."

If defendants in error purchased the property and received it from plaintiff in error voluntarily and agreed to pay for it in December, 1925, as alleged in the declaration, they had a right to appropriate it to their own use, and they were not guilty of conversion. The first additional count did not state a cause of action for conversion and the third additional count did not state a cause of action for a conspiracy to ruin plaintiff in error's business. They both attempted to state a cause of action for fraud and deceit based upon future promises and not upon past promises and were insufficient to sustain a verdict.

It is insisted that improper evidence was admitted, that the damages are excessive, and that the court improperly held certain propositions of law and refused to hold other propositions of law. It will not be necessary to consider these questions.

The judgment of the Appellate Court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner.Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*