John W. ZIESE and John H. McKeown,
Plaintiffs-Appellees,

v.

RAMADA INNS, INC., a Delaware Corporation, Defendant-Appellant.

No. 71–1441.

United States Court of Appeals,
Seventh Circuit.

Argued March 2, 1972.

Decided June 2, 1972.

Louis B. Tishler, Jr., Hugh A. Zimmerman, Chicago, Ill., for defendant-appellant.

Walter T. Morey, John F. Dunn, Decatur, Ill., for plaintiffs-appellees.

Before PELL and SPRECHER, Circuit Judges, and DILLIN, District Judge.*

DILLIN, District Judge.

Plaintiffs brought separate actions requesting specific performance of identical stock option agreements which they executed with Ramada Inns, Inc. (hereafter "Ramada"), on September 30, 1965.

The two actions, originally brought in the Circuit Court of Macon County, Illinois, were removed to the United States District Court for the Southern District of Illinois, and there consolidated. The consolidated case was tried before the Court, which entered judgment in favor of plaintiffs, ordering specific performance of the agreements.

At the time the option agreements were executed, and at all other times herein mentioned, plaintiffs were officers and directors of Swain & Myers Associates, Inc. (hereafter "S & W"), a subsidiary of Ramada. The agreements granted each plaintiff the option to purchase all or any part of 5,000 shares of unissued Ramada common stock at the price of $7 per share. Twenty-five percent of such shares could be purchased during the twelve months beginning one year from the date of the agreement. An additional 25% of the shares became available on September 30 of each year thereafter.

Key provisions of the agreements are (1) that they are irrevocable, except that (2) if the employee's employment is terminated before the right to exercise the option as to any increment has accrued, then his right to exercise the option as to the remaining increment or increments thereupon terminates, and (3) such employment may be terminated at any time, with or without cause (paragraph 11).

Plaintiffs duly exercised their rights under the agreements in 1966, 1967, and 1968. In January, 1969, however, representatives of Ramada met with plaintiffs to discuss their options as to the remaining 25%. Plaintiffs were told that steps would be taken to cancel the options if the losses S & W had been suffering were not reversed.

In June, 1969, another meeting was held. Ramada asked plaintiffs to relinquish their options in exchange for an agreement whereby Ramada would sell plaintiffs a part interest in S & W. When this offer was refused, plaintiffs were informed that Ramada intended to dispose of its interest in S & W and cancel the option agreement. During a telephone conversation in early July, plaintiff McKeown again refused to relinquish his option rights. He was told that Ramada intended to elect a new board of directors for S & W, which would effect the termination of plaintiffs' employment. The effect of this move would, of course, serve to cancel plaintiffs' remaining stock options.

Additional discussions were held during August and September. Following a meeting on August 12 or 13, an agreement was drafted whereby plaintiffs, among other conditions, would relinquish their options in exchange for new options to purchase stock at a higher price and would be permitted to purchase 51% of S & W stock. Once again plaintiffs refused to make an agreement, although they did not specifically base their refusal on the unacceptability of Ramada's proposal that they relinquish their option rights. On September 16, Ramada received a new proposal from plaintiffs' counsel which was silent as to the stock options.

On the same date Ramada mailed notices of a special meeting of S & W stockholders to be held September 25, for the purpose of electing a new board of directors. The meeting was canceled when Ramada was informed by plaintiffs' counsel that Illinois law required

---

* District Judge S. Hugh Dillin of the Southern District of Indiana is sitting by designation.

prior notice of ten days before stockholders' meetings.

Thwarted in its effort to discharge the plaintiffs, Ramada, through its president, sent them the following message by telegram and letter:

"Pursuant to the rights granted to the undersigned under that certain Option Agreement dated September 30, 1965 between Ramada Inns, Inc. as the Company and yourself as the Employee, including, but not limited to Paragraph 11 of said Agreement, Ramada Inns, Inc. has exercised its right to terminate your employment as of September 25, 1969, for all purposes connected with that Option Agreement.

> RAMADA INNS, INC.
> By: Marion W. Isbell,
> President"

After the last increment of plaintiffs' options became available on September 30, 1969, defendant refused to accept plaintiffs' tender of the full purchase price.

## INTERPRETATION OF OPTION AGREEMENT

Ramada admits the plaintiffs' "employment," in the usual sense of that word, was not terminated prior to the accrual of the final option increment. However, it urges reversal of the judgment on the theory that the terms of the option agreements granted it the additional right to terminate plaintiffs' employment for purposes of the agreements only.

■ Because the agreement itself does not specifically define "employment," acceptance of Ramada's theory requires the word to be defined as meaning "employment for purposes of exercising the stock option." We find no merit in this interpretation because there is no evidence, either in the language of the agreement or in the testimony of witnesses, that the parties intended at any time to give "employment" anything other than its usual meaning.

■ Ramada further argues that since the stated purpose of the agreement was to increase incentive and thereby profits, the fact that losses were suffered gave the company the right to cancel plaintiffs' options. The language of the agreement does not support this contention. Nowhere is profitability made a condition precedent to exercising the options. In fact, as above pointed out, the agreement is expressly made irrevocable, given employment, and absent certain other conditions not in issue.

## PROMISSORY ESTOPPEL

Ramada introduced evidence in an effort to prove that plaintiffs lulled it into foregoing to take timely action to terminate plaintiffs' employment. Specifically, two witnesses for Ramada testified that plaintiff Ziese told them on September 2, 1969, in regard to the proposed agreement of August 12 or 13, "Quit worrying, you've got a deal." Ziese denied having made this statement, which presented a clear-cut issue of fact. Further Ramada had been informed, prior to September 16, that plaintiffs would decline to sign the proposed agreement. Throughout the many discussions of June, July, and August, 1969, plaintiffs never wavered in their refusal to relinquish their option rights. On September 16, when Ramada still had time to elect a new S & W board of directors before plaintiffs' options accrued, plaintiffs submitted a proposal that was silent as to stock options.

■ Under Illinois law promissory estoppel may be applied where a promise is made with the intent that it be relied upon, and the promisee in reliance thereon puts himself in such a position that grave injustice would result if the promise is not kept. In order to be enforceable, the promise must be unequivocal. Barker-Lubin Co. v. Wanous, 26 Ill.App. 2d 151, 167 N.E.2d 797 (1960).

The district court concluded that Ramada failed to carry its burden of proving promissory estoppel. After reviewing the evidence this Court finds that such conclusion was not clearly erroneous. As a result it may not be set aside. Rule 52(a), Federal Rules of Civil Procedure.

The judgment of the District Court is affirmed.