LINCOLNLAND PROPERTIES, INC., Plaintiff-Appellee, *v.* BUTTERWORTH APARTMENTS, INC., *et al.*, Defendants and Third-Party Plaintiffs-Appellants.— (BANK OF COMMERCE OF MILWAUKEE *et al.*, Third-Party Defendants-Appellees).

Fourth District   No. 14271

Opinion filed November 8, 1978.—Rehearing denied December 20, 1978.

Olsen & Olsen, of Springfield, for appellants.

Thomas F. Londrigan, of Londrigan & Potter, P. C., and Brown, Hay & Stephens, both of Springfield (Edward J. Cunningham, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

A real estate deal.

Plaintiff won.

We affirm—almost *in toto*.

But first, a synopsis of the tedious and the prolix facts.

Russel Lesperance was a shareholder in the defendant corporations which owned seven apartment properties. Lesperance contacted W. Joseph Gibbs concerning the purchase of those properties and (after some preliminary negotiations) Gibbs formed Lincolnland Properties, Inc., in order to acquire them. Their designations will be helpful:

1. Butterworth Apartments, Inc. (Moline 42),
2. University Apartments of Normal, Inc. (Champaign 21),
3. University Apartments, Inc., of Normal, Illinois, and Landmark Apartments of Urbana, Inc. (Normal 36),
4. Landmark Apartments of Urbana, Inc. (Urbana 118),
5. West Townhouse Apartments of Champaign, Inc. (Champaign 45),
6. Golfview Apartments of Peoria, Inc. (Golfview 24),
7. Golfview Apartments of Peoria, Inc. (Golfview 42).

Shortly before the closing, Gibbs discovered that Urbana 118 was subject to a recorded, but unlisted, third mortgage in the amount of

$300,000. That mortgage was from Landmark Apartments of Urbana, Inc., to Russel Lesperance and Lesperance Builders, Inc. (a wholly owned corporation of Lesperance), and had been assigned to the Bank of Commerce of Milwaukee, Wisconsin. Or, a chart might show it this way:

Landmark Apartments of Urbana, Inc. $\longleftrightarrow$ Russel Lesperance and
    (mortgagor-seller)                              Lesperance Builders, Inc.
                                                    (mortgagees)

Lincolnland Properties, Inc.                                           Bank of Commerce
    (purchaser)                                                 (assignee)

Gibbs testified that Lesperance advised him that this encumbrance was not a valid debt since it was owed to himself and one of his solely owned corporations and that he could get the mortgage released. Lesperance denied making the statement.

Then on March 24 and 25, 1967, Lincolnland Properties (Gibbs) entered into seven separate contracts for the purchase of each apartment complex and gave the defendants notes evidencing an aggregate indebtedness of $465,000. The contracts were signed by: Russel J. Lesperance, as president of the defendant corporations; Russel J. Lesperance, individually and as shareholder; Virginia K. Lesperance, individually and as shareholder; and Lincolnland Properties, Inc., by W. Joseph Gibbs, as president. The addendi to the agreements were signed by the defendant corporations by Russel J. Lesperance; and by Russel J. Lesperance, personally; and by Lincolnland Properties, Inc., by W. Joseph Gibbs, as president; and as to paragraph 5 only, by W. Joseph Gibbs, personally.

In April 1967, Champaign 45, which was in foreclosure at the time of the March sale to Lincolnland Properties, Inc., was sold to the First Illinois Trust for $686,000. Lesperance testified that he was not aware until December 8, 1968, that this sale had occurred. Donald Snodgrass (an in-house contractor for First Illinois Trust and a general contractor for Lesperance) testified that he had been warned by Gibbs not to tell Lesperance that First Illinois Trust had purchased the Champaign 45 property. However, Lesperance had executed an assumption agreement on April 1, 1967, wherein he acknowledged that the trustees of the First Illinois Trust had assumed the first mortgage to Metropolitan Life Insurance Company on Champaign 45. On April 21, 1967, Gibbs wrote Lesperance that he was "in the process of closing on West Townhouse Apartments of Champaign, Inc." (Champaign 45).

Gibbs invested in certificates of deposit $67,400 that had been received from rentals and the sale of Champaign 45. Lesperance maintained that Gibbs at that time represented that he was without funds. Donald Snodgrass testified that during this period Gibbs admonished him not to give Lesperance any information, told him that Lesperance was in financial difficulty and said that if Lesperance was forced into bankruptcy, less would have to be paid on the obligations. On the other hand, Gibbs testified that Lesperance knew of the Champaign 45 sale and the funds, but that there were other usages to be made of the money.

As time progressed, Gibbs believed he could not operate the apartment properties without refinancing the Kirkaby-Natus mortgage which was a second mortgage on some of the properties. However, because of the $300,000 mortgage on Urbana 118, refinancing could not be obtained without Gibbs' personal guarantee. Gibbs claimed the right to offset payment of the $300,000 mortgage on his $465,000 obligation to the defendant corporations, but Lesperance maintained that the $300,000 mortgage was a valid debt assumed by Lincolnland Properties, Inc.

So in October 1967, Lesperance and his attorneys met with Gibbs in an effort to settle their differences. The parties reached an agreement commonly known as the October 5, 1967, agreement. Under the agreement, Gibbs was to arrange the assignment of the Kirkaby-Natus mortgage to the Springfield Marine Bank to refinance the Kirkaby-Natus mortgage and, if necessary, he was to personally guarantee the mortgage note. Provided that Lesperance refinanced the Kirkaby-Natus obligation thus releasing Gibbs from his personal liability to Springfield Marine Bank, Lesperance had the option to purchase the capital stock of Lincolnland for a sum of $42,500. If the refinancing could not be obtained on or before March 1, 1968, the option to purchase said stock would expire and all the notes previously issued by Lincolnland to Lesperance were to be paid by applying one-half of the net cash flow to the purchase price under the original contract dated March 24, 1967.

Gibbs obtained a personal loan and bought the Kirkaby-Natus mortgage, but Lesperance failed to obtain a refinancing commitment.

When Lesperance refused to acknowledge the validity of the October 5 agreement, plaintiffs filed this action for an injunction and declaratory judgment. And a plethora of pleadings and motions followed! For our purposes, the lawsuit essentially evolved as follows: Lincolnland Properties, Inc., filed a complaint seeking to enforce the October 5, 1967, agreement. After a stipulation and settlement agreement had been entered into, Ginkids Investments, Inc. (the successor to the apartment properties), confessed judgment against Lincolnland on the judgment notes in Wisconsin and brought garnishment proceedings in Illinois. Lincolnland filed a petition seeking a temporary injunction against

Butterworth, University, Landmark, West Townhouse, and Golfview Apartments and Ginkids Investments, Inc. In a second supplemental petition, Lincolnland added the Bank of Commerce of Milwaukee, Wisconsin, and the Cultural, Educational Research Foundation, Inc., and sought the release of the $300,000 mortgage on Urbana 118. The Bank of Commerce then filed a third-party complaint against Lesperance Builders and Russel J. Lesperance. Ginkids Investments, Inc., and Russel and Virginia Lesperance filed a counterclaim against Lincolnland Properties, Inc., and W. Joseph Gibbs.

The case was called for trial and after Lincolnland and Gibbs rested, the Bank of Commerce was dismissed from the case. Lincolnland then filed an amended complaint against the apartments, Lesperance, and the Bank of Commerce. Lesperance and the apartments then filed a counterclaim against the Bank of Commerce.

On November 13, 1975, the trial court found that the October 5, 1967, agreement was valid and held that the judgment notes payable to the apartments, and debts owing to Brozan Interior Decorators, be paid in accordance with that agreement. The court also found that the junior mortgage ($300,000) as between Lincolnland Properties, Inc., and Russel J. Lesperance and Lesperance Builders, Inc., was null and void. Consequently, the court held that the plaintiffs must be given credit for monies expended in obtaining the release of the junior mortgage.

Now to the substance of this review.

A

■■ ■ Defendants first contend on appeal that the amended complaint does not state a cause of action because no equitable basis is alleged— such as fraud. We agree. Fraud should be pleaded with specificity, particularity, and certainty. (*In re Estate of Hansen* (1969), 109 Ill. App. 2d 283, 248 N.E.2d 709.) However, even though a conduct is not expressly labeled "fraudulent," fraud is well pleaded if the facts alleged constitute or necessarily imply fraud. (*Newco Laundromat Co. v. A L D, Inc.* (1958), 16 Ill. App. 2d 494, 148 N.E.2d 820.) In order to establish fraud, it must be alleged and proved that:

> "* * * the statement made was of a material fact and not opinion; it must be untrue; the party making the statement must know or believe it to be untrue; the person to whom the statement is made must believe and rely on it, and have a right to do so; it must have been made for the purpose of inducing the other party to act; and the reliance by the person to whom the statement is made must lead to his injury." (*Davis v. Nehf* (1973), 14 Ill. App. 3d 318, 325, 302 N.E.2d 382, 388.)

The amended complaint of Lincolnland Properties, Inc., read in pertinent part as follows:

"5. That at the time of closing, viz., March 24, 1967, and at divers times thereafter, Lesperance related to Lincolnland that there was a Three Hundred Thousand Dollar Mortgage on the real estate described in Exhibit 3, commonly known as the Urbana 118 Project, but that said note and mortgage were invalid and of no effect and that Lesperance would obtain its release forthwith,* * *.

6. On or about March 24, 1967, Plaintiff was informed that said note and mortgage had been assigned to the Bank of Commerce of Milwaukee, Wisconsin, and that said Bank would release the mortgage upon the request of Lesperance. Lesperance now claims that said note and mortgage are valid and an encumbrance on the premises commonly known as the Urbana 118 Project."

There is no explicit allegation that Lesperance knew that his alleged statement concerning the mortgage was false at the time he made it; nor is falsity implied. Thus, fraud has not been pleaded with the necessary specificity.

■■■ However, the facts clearly present the question of *estoppel* which we may adjudicate on the merits in our complete review of the case. (Ill. Rev. Stat. 1975, ch. 110A, par. 366(a); *Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 365 N.E.2d 1019; *City of Wyoming v. Illinois Liquor Control Com.* (1977), 48 Ill. App. 3d 404, 362 N.E.2d 1080.) A party is estopped from denying the validity of a promise where it is made with the intent that it be relied upon and—in reliance—the promisee puts himself in such a position that grave injustice would result if the promise is not kept. (*Ziese v. Ramada Inn, Inc.* (7th Cir. 1972), 463 F.2d 1058.) And a fraudulent intent is not essential for recovery under promissory estoppel. *S. M. Wilson & Co. v. Prepakt Concrete Co.* (1974), 23 Ill. App. 3d 137, 318 N.E.2d 722.

■■ Here, Lesperance told Gibbs the $300,000 mortgage was invalid because it was to himself and that he could get it released without any problem. In reliance upon that promise, Gibbs signed the contracts, but Lesperance did not get the mortgage released. Although Gibbs was entitled to tender back the property if title defects were not cured within a 60-day period, he did not avail himself of that option because Lesperance continued to tell him he would get the mortgage released (although it never was). We find that Lesperance is now estopped from asserting the validity of the $300,000 mortgage.

B

■■ The next claim by the defendants is that the October 5 agreement is null and void because it lacks mutuality since Gibbs did not sign it. Although W. Joseph Gibbs was the sole stockholder of Lincolnland, he only signed the agreement as *president* of Lincolnland Properties, Inc.,

which did not have any stock to sell. A party named in a contract may by his conduct become bound by its provisions even though he has not signed it. (*Soelzer v. Soelzer* (1943), 382 Ill. 393, 47 N.E.2d 458; *New York Hamilton Corp. v. First Illinois Co.* (1930), 257 Ill. App. 125.) By assuming personal liability on the Kirkaby-Natus mortgage, Gibbs accepted the contract, thus making it mutually enforceable.

■■ Defendants assert the provision declaring the payment of the notes to be from the "net cash flow" lacks mutuality because Gibbs could reduce the rentals to a level where there would be no "net cash flow." However, mutuality exists if the right to control rentals is conditioned or limited. (See *Nathan v. Leopold* (1969), 108 Ill. App. 2d 160, 247 N.E.2d 4.) In this case an unreasonable reduction in rentals would be detrimental to any attempt to reduce the indebtedness on the property or to run a profitable operation. An unprofitable business would be detrimental both to Lincolnland Properties, Inc., and Gibbs, as its sole shareholder. An unreasonable reduction in rentals would also be in violation of Gibbs' personal obligation to use his best efforts in managing the apartments.

Defendants also claim the October 5 agreement is void because it was procured by fraud. Lesperance asserts that the following actions by Gibbs were fraudulent: He ignored Lesperance after getting title to the property; he sold Champaign 45 without consulting Lesperance; he told Lesperance that the properties were in financial distress while he was buying certificates of deposit from the proceeds of the Champaign 45 sale and from rental receipts; he permitted Urbana 118 to go into foreclosure by failing to make mortgage payments; he refused to give Lesperance any financial information; and he refused to sign or perform under the October 5 agreement with the intent to undermine Lesperance's financial ability. The majority of these allegations, however, are simply not misrepresentations which would warrant a finding of fraud. Furthermore, Gibbs presented evidence disputing these assertions. Since the trial court's determination that Gibbs' actions were not fraudulent is not against the manifest weight of the evidence, it should not be overturned. *Gaffney v. McCarron* (1977), 45 Ill. App. 3d 944, 360 N.E.2d 508.

## C

Next, defendants say that the trial court failed to adequately compensate them for their loss. The record on this issue—although lengthy—is somewhat murky. Lesperance claims by conclusion that he had paid $97,741.95 on obligations assumed by Lincolnland Properties, Inc., and had $20,000 and $90,000 judgments against him on other assumed obligations. He asserts Gibbs paid only $14,955.14 on the assumed obligations and nothing on the notes, while Gibbs testified he assumed $280,000 and paid $220,000 of the obligations. The trial court found for the

defendants on the judgment notes and the various debts owing to Brozan Interior Decorators, but nothing more. Since the defendants have not shown by the record how that finding is against the manifest weight of the evidence, it will be affirmed. (*Wallace v. Blue Cross Hospital Service, Inc.* (1973), 13 Ill. App. 3d 803, 300 N.E.2d 531; *Louis v. Checker Taxi Co.* (1943), 318 Ill. App. 71, 47 N.E.2d 351.) Without proof of the error of that judgment, consequential damages do not arise.

## D

Finally, defendants maintain the trial court went against the manifest weight of the evidence by finding that the plaintiffs be given credit for any monies expended in obtaining the release of the $300,000 junior mortgage to be applied against any indebtedness of Lincolnland Properties, Inc., to University Apartments, Inc., of Normal, Illinois, Landmark Apartments of Urbana, Inc., Butterworth Apartments, Inc., West Townhouse Apartments of Champaign, Inc., Golfview Apartments of Peoria, Inc., Russel J. Lesperance, Lesperance Builders, Inc., Ginkids Investments, Inc., or the successors or assigns of any of them. Although the $300,000 mortgage was a lien only against Landmark Apartments of Urbana, Inc., the trial court in substance made its release a prerequisite to the collection on the other judgment notes and—thus, in effect—made it a lien on the other properties also.

■■ Plaintiffs argue this holding is correct since setting the junior mortgage off only against Landmark would not totally rectify the fraud of Landmark's *alter ego,* Lesperance. However, this argument must fail since we have found that fraud was not properly alleged. Estoppel is only intended to protect a party from a loss and not to work a positive gain, and parties should be placed in the same relative position which they would have occupied if the predicate of the estoppel had never existed. *Texas Co. v. Chicago & A.R. Co.* (7th Cir. 1942), 126 F.2d 83.

Although there is no evidence as to the amount needed to remove the $300,000 mortgage from Urbana 118, Lincolnland alleged that the Bank of Commerce had agreed to settle upon the $300,000 mortgage for $56,528.14. The Bank of Commerce's third-party complaint alleged there was $170,000 owing on the loans for which the $300,000 mortgage was assigned as collateral. Since the $175,000 Urbana 118 judgment note to Lesperance is greater than either amount alleged to be necessary to remove the $300,000 mortgage on Urbana 118, the mortgage should be limited to Urbana 118 in order to protect Gibbs without advancing his position.

Under this point, defendants also argue that the Bank of Commerce was a necessary party to the determination of the mortgages' validity. The Bank of Commerce was originally brought into this suit by Gibbs on his second supplemental petition which alleged that a $300,000 mortgage—executed by Urbana 118 and subsequently assigned by Lesperance and

Lesperance Builders, Inc., to the Bank of Commerce—was not a valid mortgage lien on Urbana 118. The Bank of Commerce filed an answer asserting that it was a valid mortgage and that it was assigned as collateral to an indebtedness of Hope Acres, Inc., to the Bank of Commerce. At the time of the trial in May and June 1975, Lesperance had no claim against the Bank of Commerce.

After Gibbs presented his case and rested on June 5, 1975, the Bank of Commerce was dismissed from the suit. Upon dismissing the bank, the court stated that it was only deciding that between the plaintiff and the Bank of Commerce the mortgage was valid, but it was not ruling on the validity of the original mortgage. On that same date an amended complaint of Gibbs against Lesperance and the Bank of Commerce was handed to the attorneys for the Bank of Commerce alleging the account to be a conspiracy between the Bank of Commerce and Lesperance. On March 21, 1976, Lesperance filed a counterclaim for $10,000,000 against the Bank of Commerce alleging a conspiracy between Gibbs and the Bank of Commerce. These matters were heard on motions and after briefs were filed they were dismissed by the court.

■■ The appellate brief of defendants does not mention the dismissal of the counterclaim against the Bank of Commerce. Since the dismissal was not argued, the right to contend that the dismissal of the Bank of Commerce was erroneous has been waived. (Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7).) The only matters concerning the Bank of Commerce are the allegations by the defendants that the court's finding that the mortgage was null and void is erroneous. Since the Bank of Commerce had been dismissed from the case and was not a party to the order, the decree of November 13, 1975, making this declaration, does not affect the bank's interests. *Waller v. Waller* (1950), 341 Ill. App. 204, 93 N.E.2d 113.

Defendants also argue that the dismissal order finding the mortgage assigned to the Bank of Commerce was presumptively valid, is inconsistent with the 1975 judgment order which found the mortgage "null and void." However, the equities of the parties make the mortgage null and void as between Lesperance and Lesperance Builders, Inc., and Lincolnland Properties, Inc., but not as between Lincolnland Properties, Inc., and the Bank of Commerce. See *Miller v. Larned* (1882), 103 Ill. 562.

The judgment of the trial court is affirmed in all respects, save one: The monies expended by the plaintiffs in obtaining the release of the $300,000 junior mortgage shall only be applied as a credit against the indebtedness of Lincolnland Properties, Inc., to Urbana 118.

Affirmed in part, reversed in part.

GREEN, P. J., and TRAPP, J., concur.