DONALD J. REDAROWICZ, Plaintiff-Appellant, *v.* WILLIAM J. OHLENDORF, d/b/a Ohlendorf Builders, Inc., Defendant-Appellee.

Fourth District    No. 16392

Opinion filed April 24, 1981.

CRAVEN, J., concurring in part and dissenting in part.

Heyl, Royster, Voelker & Allen, of Peoria (Timothy L. Bertschy, of counsel), for appellant.

Costigan & Wollrab, of Bloomington, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal presents questions of pleading. The circuit court of McLean County dismissed all six counts of plaintiff's complaint for various reasons as will be more fully discussed. The complaint centered around defects which appeared in plaintiff's home. Defendant was the builder.

Counts I and V alleged negligence resulting in economic loss to the plaintiff. Count II alleged that plaintiff was a third-party beneficiary of an agreement between defendant and the City of Bloomington, which had agreed not to prosecute defendant under the city building code if he made repairs. Count III alleged breach of the warranty of habitability. Count IV alleged fraud. Count VI was based on contract, an agreement by defendant with plaintiff to make repairs in exchange for plaintiff's promise to forego further legal action.

We affirm the dismissal of all counts except Count VI based on the agreement.

The factual situation is relatively uncomplicated. The complaint alleges that defendant constructed the home, completing it in late 1975 or early 1976, for the original owners. Plaintiff purchased the premises from those original owners in April 1977. Shortly thereafter he discovered the

defects complained of. In summary form, these are that the chimney and adjoining brick outer wall began to pull away from the rest of the house because defendant did not attach them firmly, that the wall and chimney were set in loose soil, thereby violating the local building code, that the supporting lintel was set only 24 inches deep, being another violation of the building code, and that the patio was improperly constructed. As a result of the movement of the chimney and the wall, a basement wall cracked and admitted water. Water also entered the roof near the affected area. Plaintiff has since caused repairs to be made by others.

■■ In reviewing a complaint dismissed for failure to state a cause of action, properly pleaded allegations are assumed to be true. *Giers v. Anten* (1978), 68 Ill. App. 3d 535, 386 N.E.2d 82.

Counts I and V (the negligence counts) were dismissed by the trial court on the basis (1) that only economic loss was alleged, and (2) that there was either a lack of duty or lack of privity. The parties are in dispute over which was the true basis of the court's ruling.

As to the economic loss, we are aware of the recent ruling in *Moorman Manufacturing Co. v. National Tank Co.* (1980), 92 Ill. App. 3d 136, 414 N.E.2d 1302, *appeal allowed* (1981), 84 Ill. 2d 19, which is cited in the dissent. However, we find significant differences between the instant case and *Moorman. Moorman* defined economic loss as:

> "Economic loss may be either direct or consequential. Direct economic loss occurs when a product damages itself or is unfit for the purpose for which it was sold. Such losses are generally limited to the price of the product. Consequential economic loss consists of an injury extrinsic to the product, such as lost profits or the loss of use of the product." (92 Ill. App. 3d 136, 138, 414 N.E.2d 1302, 1305.)

There is no allegation in the instant case that the house was a total loss as a result of the purported defects. In fact, it is apparent that plaintiff continued to use the house for its intended purpose, albeit with some disaccommodation.

Furthermore, *Moorman* was concerned with a "product." In holding that a grain storage tank was a product for purposes of strict liability, the court said:

> "Illinois courts have said that certain items, under the facts presented, were not products: a condominium [citation]; a shelter care home [citation]; and a multilevel parking garage [citation]. The question of whether something is a product is determined by looking to the policies supporting the strict liability in tort doctrine. We have discussed these policies above—the manufacturer's special responsibility to buyers, the need to protect helpless

buyers, and the cost-spreading capacity of the manufacturer." 92 Ill. App. 3d 136, 146, 414 N.E.2d 1302.

It is apparent that a single-family, custom-built dwelling is not such an item as will permit the manufacturer to spread the cost of a defect over a large number of persons under the rationale of *Moorman.*

For these reasons we find *Moorman* inapposite.

■■ We agree that under modern tort theory privity is no longer a requirement. However, we know of no well-reasoned case which eliminates the requirement of duty. (*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368.) Defendant, as the original contractor, owed no duty to third persons under a negligence theory. Defendant argues that duty should be a matter of "public policy" and should be grounded in "fairness." We do not agree. Duty rests in an obligation imposed by law of which public policy and fairness are consequences, not antecedents. Plaintiff's effort in counts I and V is to counteract the traditional contract limitations on damages by converting the action into one of tort. The trial court properly dismissed counts I and V.

Count II was based upon an admitted agreement between the city of Bloomington and defendant that the city would not prosecute under its building code if defendant made the necessary corrections and repairs. Plaintiff claims to be a third-party beneficiary of this agreement.

■■ The third party to an agreement may not sue on it unless he was the direct and intended beneficiary. (*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918; *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.) *Parrett* said:

> "The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing can not be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability." 346 Ill. 252, 258, 178 N.E. 498, 501.

■■ Two propositions militate against plaintiff's position on this issue. First, we find nothing in the agreement which indicates that plaintiff was anything but a collateral and incidental beneficiary. The purpose of the agreement was to compel compliance with the building code, not to repair plaintiff's house. Second, the enforcement of laws is not for the benefit of any individual, but for the public at large. (*Porter v. City of Urbana* (1980), 88 Ill. App. 3d 443, 410 N.E.2d 610.) The trial court was correct in dismissing count II.

■■ Count III sounded in warranty of habitability. This theory is disposed

of by the recent decision in *Mellander v. Kileen* (1980), 86 Ill. App. 3d 213, 407 N.E.2d 1137. Plaintiff asks us to reexamine our position in this matter, and we decline to do so. Plaintiff was a subsequent purchaser, and under the rationale of *Mellander* the warranty does not run to him. Dismissal of count III was correct.

Count IV alleged fraud: that the defendant never intended to make repairs but plaintiff relied on his promise to the city. In this connection plaintiff relies heavily on *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634. We find significant differences between the instant case and *Steinberg*.

Fraud consists in the misrepresentation of a past, or existing, fact, not on a promise to do something in the future. (*Polivka v. Worth Dairy, Inc.* (1974), 26 Ill. App. 3d 961, 328 N.E.2d 350.) *Steinberg* indicated an exception when the grounds of the fraud were a scheme or plot, but the representations were of past facts, *i.e.*, the published standards.

■■ Furthermore, the representation must be made to the party who relied upon it to his detriment and injury. (*Lincolnland Properties v. Butterworth Apartments* (1978), 65 Ill. App. 3d 907, 382 N.E.2d 1250.) Here the statement, or agreement, was made to the city of Bloomington, and any detriment suffered was by the city in its failure by accepting defendant's promise to enforce its building code. Plaintiff may have relied upon this promise, but if so, he had no right to do so, as we have already discussed above in connection with his third-party-beneficiary theory. Count IV was properly dismissed.

We find count VI to be sufficient to withstand a motion to dismiss. The trial court was incorrect, therefore, in this connection.

■■ Count VI alleges two agreements between the plaintiff and the defendant for the defendant to repair the chimney, fireplace, and outside walls at the defendant's expense in exchange for the plaintiff's promise not to sue him. The trial court dismissed this count for want of valid consideration; a promise to forego legal action is consideration and an agreement based on that is enforceable. *White v. Walker* (1863), 31 Ill. 422; *United Factors Division of United Merchants & Manufacturers, Inc. v. Murphy* (N.D. Ill. 1971), 345 F. Supp. 768.

The order of the circuit court of McLean County in dismissing counts I, II, III, IV, and V is affirmed. The order insofar as it dismissed count VI is reversed, and the cause is remanded for further proceedings as to count VI.

Affirmed in part, reversed in part, and remanded.

TRAPP, P. J., concurs.

Mr. JUSTICE CRAVEN, concurring in part and dissenting in part:

The majority opinion is correct only insofar as it relates to count VI. That count does state a cause of action. The balance of the majority opinion reflects on the law as it was and the problems of yesterday. It seems not to turn to problems as they factually exist today and makes the law not an instrument of solving the problems of today or tomorrow.

## I

In counts I and V, the plaintiff alleges negligence and seeks to recover his economic loss—the cost of repairing or replacing the defective chimney, wall, and patio. The trial court incorrectly ruled that because the two negligence counts alleged only economic loss, recovery could not be had because the plaintiff and defendant were not in privity.

Privity is not an element of negligence actions. In *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 62, 250 N.E.2d 656, 660, the supreme court said:

> "This process of adhering to or eliminating the privity require-ment has proved to be an unsatisfactory method of establishing the scope of tort liability to third persons. * * * To eliminate any uncertainty still remaining after *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 617, we emphasize that lack of direct contractual relation-ship between the parties is not a defense in a tort action in this jurisdiction. Thus, tort liability will henceforth be measured by the scope of the duty owed rather than the artificial concepts of privity."

This first issue has two remaining facets: Whether a plaintiff may recover economic losses and whether the rule immunizing contractors from liability in tort after their work has been accepted by the owner applies in this case.

As we determined in *Moorman Manufacturing Co. v. National Tank Co.* (1980), 92 Ill. App. 3d 136, 414 N.E.2d 1302, economic losses may be recovered in a negligence action even in the absence of damage to other property or personal harm. The difference between grain bins and homes does not compel a different result; we are not faced here with the question whether a home is a product for purposes of strict liability. Courts in other States have also concluded that a cause of action is stated by a count alleging the negligent construction of a home and resulting economic losses. *Brown v. Fowler* (S.D. 1979), 279 N.W.2d 907 (house built on insufficiently compacted fill settled; recovery permitted for the foreseeable damage); *Moxley v. Laramie Builders, Inc.* (Wyo. 1979), 600 P.2d 733 (owner permitted to recover costs of replacing defective elec-trical wiring in home); *Sabella v. Wisler* (1963), 59 Cal. 2d 21, 377 P.2d

889, 27 Cal. Rptr. 689 (owner allowed to recover cost of repairing home that settled).

The defendant also argues that the accepted work doctrine bars recovery; under that rule, an independent contractor is relieved from tort liability once he completes his work and the owner accepts it. The rule comes into play when a contractor who has done work for the owner of the land is sued. In this case, however, the home was constructed on speculation, meaning that the builder owned the land at the time of construction and sold both land and home together when the work was done. Thus, the defendant here is not the sort of independent contractor imagined by the rule.

Furthermore, the accepted work doctrine has eroded over the past several decades. In *Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 40, 139 N.E.2d 275, 282, the court said that an independent contractor is not liable for negligence after the completion and acceptance of his work except

> "(1) where the thing dealt with is imminently dangerous in kind, such as explosives, poisonous drugs, and the like, (2) where the subject matter of the contract is to be used for a particular purpose, requiring security for the protection of life, such as a scaffold, and (3) where the thing is rendered dangerous by a defect of which the constructor knows but deceitfully conceals, and which causes an accident when the thing is used for the particular purpose for which it was constructed."

*Johnson v. Equipment Specialists, Inc.* (1978), 58 Ill. App. 3d 133, 373 N.E.2d 837, was a negligence action for personal injuries and wrongful death. The court surveyed the developments in the field since the decision in *Paul Harris* and said that the rule had "been swallowed by its exceptions." (58 Ill. App. 3d 133, 138, 373 N.E.2d 837, 841.) Given the Illinois Supreme Court's acceptance of sections 402A, 352, and 353 of the Restatement (Second) of Torts, *Johnson* thought that section 385 would also be approved; that section provides that a builder who erects a structure for "the possessor of land" is liable for personal injuries to the same extent as a manufacturer of chattels.

*Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, clarifies the diminished scope of the accepted work doctrine. In *Hunt*, occupants of a car were killed and injured when their vehicle hit a highway sign. The trial and appellate courts ruled that the negligence action for the injuries and deaths did not state a cause of action because of the accepted work rule; the supreme court affirmed the result but gave a different reason, saying that the accepted work doctrine was a corollary of the privity require-

ment and therefore had been vitiated by *Suvada*. Yet the contractor being sued had built and installed the sign according to the State's specifications and instructions. *Hunt* held that an independent contractor owes no duty to third persons to judge the plans and instructions that "he has merely contracted to follow." The court said that a contractor may rely on the plans unless they are obviously dangerous. According to the plaintiff's allegations here, the defendant-builder constructed the house according to his own and not another's plans. Even in its currently attenuated form, then, the doctrine is no bar to recovery in this case.

## II

The plaintiff's second count alleges an agreement between the defendant and the Bloomington corporation counsel that the defects in the plaintiff's house would be repaired and that the city would not prosecute the defendant for violating the local building code. According to the complaint the defendant began to repair the problems but did not complete the work. The plaintiff argues that he is a third-party beneficiary of the city's and the defendant's agreement. The defendant does not dispute that he and the city reached an agreement but instead challenges its legal effect.

The defendant misinterprets the agreement as a contract to violate a municipal ordinance. The city's promise to forego prosecuting the defendant does not violate public policy. The agreement contemplated the correction not the continuation of the defects—the goal was bringing the house into conformity with the local building code—and was designed to settle the problems outside court.

The third party to an agreement may not sue on it unless he was the direct and intended beneficiary. (*People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918; *Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498.) *Parrett* said:

> "The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing can not be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability." (346 Ill. 252, 258, 178 N.E. 498, 501.)

This passage pertains to a third party's capacity to sue under an agreement rather than to the amount of a defendant's potential monetary liability. That the defendant's only liability to the city would have been a

fine does not mean that the plaintiff may not recover more when suing as a third-party beneficiary of the agreement. The trial court therefore was incorrect in dismissing the second count.


### III

The plaintiff's third count seeks recovery under the warranty of habitability implied when a builder sells a home. (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154.) When accepted as true, the allegations show defects sufficiently serious to fall within the scope of the implied warranty of habitability. Separation of the chimney and wall from the rest of the house, with the resulting invasion of the elements, violates that warranty. (*Park v. Sohn* (1980), 90 Ill. App. 3d 794, 414 N.E.2d 1.) Recovery for the patio is based on negligence only. Unless he has disclaimed the warranty (*Petersen*), a builder should be liable until expiration of the applicable statute of limitations for the cost of repairing a house that is falling apart.

*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 421 N.E.2d 182, did not decide that the implied warranty does not apply to subsequent purchasers; *Altevogt* held that subsequent owners are not third-party beneficiaries of the warranty and thus rejected merely one means of extending the warranty to persons not in privity with the builder.

I disagree with the result in *Mellander v. Kileen* (1980), 86 Ill. App. 3d 213, 407 N.E.2d 1137, where this court held that only persons in privity with the builder may assert the implied warranty of habitability. *Mellander* reasoned that because *Petersen* spoke in terms of conveyancing, it meant to apply the law of real property rather than that of the Uniform Commercial Code; privity is not required in actions based on the implied warranties of the Code. (*Berry v. G. D. Searle & Co.* (1974), 56 Ill. 2d 548, 309 N.E.2d 550.) Yet, implied warranties are not purely contractual in nature; they are a mixture of tort and contract principles. Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn. L. Rev. 791, 800 (1966).

The better view extends the warranty of habitability to subsequent purchasers; *Petersen* recognized the warranty as a "distinct departure from accepted principles of real estate law that were based on reasons founded in antiquity." (76 Ill. 2d 31, 38, 389 N.E.2d 1154, 1157.) The role of this "creature of public policy" (76 Ill. 2d 31, 43, 389 N.E.2d 1154, 1159) will be frustrated by the odd results produced by the privity requirement. The warranty will protect the first purchaser who retains ownership of the home until the applicable statute of limitations has run. At the other

extreme, a first purchaser who sells his home immediately after buying it is the last to enjoy the benefits of the warranty; the resale quickly relieves the builder of potential liability. Requiring privity will result only in time-consuming and expensive litigation, as the subsequent purchasers sue each other and eventually the original owner, who in turn sues the builder. The number of steps required will depend on the number of owners in the chain. This process was decried by the court in *Randy Knitwear, Inc. v. American Cyanamid Co.* (1962), 11 N.Y.2d 5, 13-14, 226 N.Y.S.2d 363, 368-69, 181 N.E.2d 399, 403, and by Prosser in *The Assault upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L.J. 1099, 1123-24 (1960). Its sole justification is as a pension plan for attorneys.

Cases in other States extending the implied warranty of habitability to subsequent purchasers include *Terlinde v. Neely* (S.C. 1980), 271 S.E.2d 768; *Moxley v. Laramie Builders, Inc.* (Wyo. 1979), 600 P.2d 733; and *Barnes v. Mac Brown & Co.* (1976), 264 Ind. 227, 342 N.E.2d 619. The South Carolina Supreme Court explained its reasoning in *Terlinde* in the following way:

> "The extension of implied warranties to subsequent purchasers is based upon sound legal and policy considerations. Respondents constructed the dwelling and, as the builder, held out their expertise to prospective buyers. Common experience teaches that latent defects in a house will not manifest themselves for a considerable period of time, likely as alleged in this case, after the original purchaser has sold the property to a subsequent unsuspecting buyer. Furthermore, the character of society has changed such that the ordinary buyer is not in a position to discover hidden defects in a structure, especially at a time when he is provided more elaborate furnishings which tend to obscure the structural integrity of the facility. The fact that the subsequent purchaser did not know the home builder, as did the original purchaser, does not negate the reality of the 'holding out' of the builder's expertise and reliance which occurs in the market place." (271 S.E.2d 768, 769.)

The policy concerns at work here dictate this decision. Imagined differences between real and personal property should not be allowed to restrict the implied warranty to original owners of homes.

## IV

Count IV of the plaintiff's complaint is based on fraud. He alleges that from the inception of the agreement with the city the defendant did not intend to keep his promise to make the repairs. The plaintiff also alleges reliance on the defendant's promise. (*Alikonis v. Alikonis* (1976),

36 Ill. App. 3d 159, 343 N.E.2d 161.) According to his complaint the plaintiff waited and finally had to pay another person to repair the defects, which worsened for the delay.

It is "more than adequate" to allege "[m]isrepresentation of an existing material fact coupled with scienter, deception, and injury" to state a cause of action in fraud. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 332, 371 N.E.2d 634, 640.) Although the courts in Illinois do not generally consider a false statement of intention to be a misrepresentation of a material fact (*Brodsky v. Frank* (1930), 342 Ill. 110, 173 N.E. 775), "there is a recognized exception where the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud." (*Steinberg*, 69 Ill.2d 320, 334, 371 N.E.2d 634, 641.) Here, the defendant's insincere promise was the device for accomplishing the theorized fraud; count IV should have survived the motion to dismiss.

V

This case represents several levels or modes of judicial reasoning. Count VI, alleging the plaintiff's forbearance for legal action in exchange for the defendant's promise to make the repairs, calls on the court to perform a fairly easy operation: search the common law, decide whether the plaintiff's promise is valid consideration, and apply the rule to the pleadings. Counts II and IV require greater analysis; we are called upon to read the pleadings and determine in count II whether the plaintiff is a third-party beneficiary of the defendant's agreement with the city and in count III whether the plaintiff's complaint contains sufficient allegations of fraud.

The first and third counts are more difficult; in dealing with them the court must first decide whether to follow its own recent precedents, *Moorman* and *Mellander*. Those cases are in fact conflicting—no matter how you slice it. What criteria apply? How do we decide to use one decision and reject another? At this point commentators and disgruntled litigants may object that the courts are result-oriented, that we decide a case a certain way because we like a certain result. Decisions are result-oriented and rebellious only in a few instances. I would reserve "result-oriented" as a term of opprobrium applicable only when a court decides a case contrary to a living and well-established body of law and when no sound policy justifies the departure from the established rule. But in the absence of those two conditions courts must compare competing results and determine which better effectuates public policy.

The primary purpose of law is to settle disputes between litigants; cases produce results. As a result of this process, however, courts create a body of common law that will guide the resolution of cases that arise in

the future. Yet the precedents we create are not for all times; law must respond to changing conditions in society. Fossil law, while it has historical interest, must not be allowed to outlive its utility. If synchronizing the law with the state of society is result-oriented, then the courts need to be result-oriented and should not hesitate to depart from a rule whose origin is obscure and whose meaning has been forgotten. This is evolution rather than devolution.